JOE ADAMS v. THE STATE.

No. 6242.  Decided June 8, 1921.

**1.—Robbery—Lost Records—Continuance—Practice on Appeal.**

In the absence of an application for a continuance in the record, the same cannot be considered on appeal, although the clerk states, in an affidavit, that such application was filed and subsequently lost, as lost records should be substituted as prescribed by the statute.  Following Lundsford v. State, 1 Texas Crim. App., 449, and other cases.

**2.—Same—Evidence—Res Gestae—Declarations of Injured Parties.**

Upon trial of robbery there was no error in admitting testimony that after the robbery one of the victims remarked to the other that the robbery was committed by the defendant and his companion as the same appeared to be *res gestae*, and besides it was not harmful, as the defendant and his companion were definitely identified.

**3.—Same—Evidence—Bill of Exceptions—Motive.**

Upon trial of robbery, evidence was admitted that the defendant on the second day preceding the offense engaged in a game of poker, with some of the parties who were afterwards robbed, and where the bill of exceptions did not state the surrounding facts, and did not show the parties who were engaged in the gambling, the same could not be considered on appeal, besides the evidence was admissible, under the facts of the instant case.

**4.—Same—Affidavits—Practice on Appeal.**

Disqualification of the trial judge cannot be established by an *ex parte* affidavit filed in this court; the remedy is to be sought in a forum whose jurisdiction will enable it to determine the issues of fact.

Appeal from the District Court of Stephens.  Tried below before the Honorable V. L. Shurtleff, Special Judge.

Appeal from a conviction of robbery; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Tom Leach, D. M. Doyle* and *E. W. Bonds,* for appellant.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for robbery; punishment fixed at confinement in the penitentiary for a period of seven years.

In the absence of the application for a continuance, which is not in the record, we are unable to appraise the merits of the bill of exceptions complaining of the action of the court in overruling the motion.  The affidavit of the Clerk, filed in this court, to the effect that the motion for a continuance was, in fact, filed and overruled, and subsequently lost, does not suffice.  Lost records should be substituted

in the manner prescribed by the statute. Lunsford v. State, 1 Texas Crim. App., 449; Rogers v. State, 43 Texas Reports, 406; Revised Civil Statutes, Art. 2157.

The bill complaining of the receipt of evidence that after the robbery one of the victims remarked to the other that the robbery was committed by "Blackie" Gunter and Joe Adams shows no error. The bill is too meager to inform the court of the circumstances under which the declaration was made, but if the statement of facts be looked to in aid of the bill, it is not apparent therefrom that the evidence was not admissible as a part of the *res gestae*. If it were not so, the evidence is not harmful to a degree requiring reversal inasmuch as the parties who made and heard the declaration, all testified as witnesses; two of them definitely identifying the appellant and Gunter as the persons who made the assault, and the others relating circumstances pointing thereto.

The witnesses Lee, Carpenter, May and Tyler were riding in an automobile at night time. They were stopped and robbed by two men. The witnesses were all well acquainted with the appellant and Gunter, knew their appearance and knew their voices.

Lee testified, describing the robbery, and said:

"I heard one of the men only talk and did not recognize his voice until Slats mentioned it and then I thought I heard Joe Adams' voice but was not sure. Their faces were covered. I was excited. I do not mean to tell the jury I know who either one of these parties were. I don't know who they were."

Carpenter testified that he heard the voice of one of them; that he heard the other one's voice but could not tell what he said; that two words, one voice said, were like Joe Adams' voice. Witness also said that he and Adams were still friends; and that he might be mistaken as to Adams' voice.

May testified that upon reaching a point about five hundred yards from the tent, Joe Adams and Wilbur Gunter jumped in front of them and hollered "stop;" that they had a flashlight and that he saw a gun in the hands of Joe Adams, who hollered "hands up;" that the witnesses got out of the car and were lined up; that Joe Adams held the gun on them while they were searched by Blackie Gunter. "I know it was Adams and Gunter because when they jumped in front of the car, the car light threw light on Adams without the handkerchief and he run back several steps. I heard them talk—both Joe Adams and Blackie Gunter told us to line up. I am positive it was them and I knew them. Gunter had an automatic and Adams had a revolver. Adams had a flashlight. I had seen him with a flashlight several times at the camp."

Tyler testified in substance as did May, declaring that he recognized both Adams and Gunter; that he saw their faces before they pulled their masks over them; that he saw a gun in appellant's hand but not in Gunter's hand. "I heard the voices of these men. It was the voice

of Adan·s and the voice of Gunter.  I could not be mistaken about that. After we all got in the car and drove a little piece Carpenter spoke up and said that it was Adams and Blackie, and Lee said: "Yes, that is who it was."

There was evidence that the appellants were working at the camp in which the parties robbed, or some of them, were also working. There was introduced circumstances suggesting that appellant and Gunter absented themselves from the company of the injured parties upon the occasion mentioned and intercepted them.  Details of this testimony it is deemed unnecessary to relate.  See Gunter v. State, No. 6243.

The bill complaining of the admission of evidence that the appellant, on the second day preceding the offense, engaged in a game of poker with some of the parties who were afterwards robbed, shows no error.  The bill does not state any surrounding facts and does not show that the parties were engaged in gambling.  If the statement of facts be looked to, to supplement the bill upon this point, we find that the witness Tyler testified that he was acquainted with appellant and Gunter; that he was running a casing crew; that he was working on his car and they had a poker game in the tent; that he saw some money in front of May· but could not tell the amount.  "I had some money in front of me."  If this evidence was more specific to show that appellant engaged in a game of poker for money, we think it would disclose no error.  It was relevant to show the relation of the parties as bearing upon the ability of the injured parties to identify the assailants, and also as bearing upon the knowledge of the appellant that May and Tyler were in possession of money.

There is filed in this court, an affidavit suggesting that the special judge who tried the case was disqualified.  Whether he was qualified or not depends upon the facts.  These cannot be established by an *ex parte* affidavit filed in this court.  If the judgment be void by reason of the disqualification of the trial judge, the remedy is to be sought in a forum whose jurisdiction will enable it to determine the issues of fact.

Finding no error justifying a reversal of the judgment, its affirmance is ordered.

*Affirmed.*