**BUCKHOLTS INDEPENDENT SCHOOL DISTRICT et al., Petitioners,**

v.

**Richard L. GLASER et al., Respondents.**

**No. C–981.**

Supreme Court of Texas.

April 21, 1982.

Rehearing Denied May 19, 1982.

Earl Luna, Dallas, for petitioners.

Marvin D. Shwiff, Sal Levatino, Austin, for respondents.

POPE, Justice.

This is a school bond election case in which the validity of article 717m–1[1] is challenged.

Richard L. Glaser and twenty-four other taxpayers in the Buckholts Independent School District sued the School District and its officials to have a bond election declared invalid under the election code. The School District then filed a separate suit seeking a declaratory judgment that the bond proceedings were valid under article 717m–1. The trial court ordered the consolidation of the election contest and the suit for declaratory judgment. The court also granted the School District's motion to require the taxpayers to post a bond to insure "payment of all damages and costs which may accrue by reason of the delay ... occasioned by the continued participation of the opposing par-

---

1. All statutory references are to Vernon's Texas Civil Statutes Annotated, unless otherwise noted.

ty . . . in the proceedings in the event the public agency finally prevails." This procedure is authorized by section eight of article 717m-1. When the taxpayers failed to post the required bond, the trial court dismissed the cause. The court of appeals affirmed the judgment of dismissal; but on motion for rehearing, the taxpayers urged for the first time that the trial judge was disqualified. Art. 200a, § 6. The court of appeals took judicial knowledge of the fact that the trial judge resided in the county of the contested election and then held that the trial court's judgment of dismissal was void. 625 S.W.2d 419. We reverse the judgment of the court of appeals and affirm the trial court's judgment of dismissal.[2]

■ A failure by the trial judge to recuse himself under the provisions of section 6, article 200a[3] is not fundamental error. For many decades the constitutional disqualification[4] for judges and the only statutory disqualification[5] coincided exactly. Accordingly, the constitutional disqualification of a judge was described as both "inclusive and exclusive." *Shapley v. Texas Department of Human Resources*, 581 S.W.2d 250, 253 (Tex.Civ.App.—El Paso 1979, no writ).

■ The constitutional prohibition has long been held to make any order involving judicial discretion by a constitutionally disqualified judge "absolutely void," "a nullity." *Fry v. Tucker*, 146 Tex. 18, 202 S.W.2d

218, 221 (1947); *Templeton v. Giddings*, 12 S.W. 851 (Tex.1889); *Stephenson v. Kirkham*, 297 S.W. 265, 267 (Tex.Civ.App.—San Antonio 1927, writ ref'd). Accordingly, disregard of the constitutional disqualification is error that can be raised at any point in the proceeding. *Nalle v. City of Austin*, 85 Tex. 520, 22 S.W. 960 (1893); 1 R. McDONALD, TEXAS CIVIL PRACTICE § 1.24 (rev. 1981).

The legislature in 1977 added the new statutory provision for disqualification that is in question here. Art. 200a, § 6. In adopting the amendment to article 200a the legislature provided that the judge "has a duty" to recuse himself. The same section of the statute authorizes the judge to request the presiding judge of the administrative district to assign a judge to hear the motion to recuse. The legislature's mention of motions to recuse shows that it did not intend a disqualification that would make all actions void.

■ The taxpayers waived any error on the part of the trial judge. The correct procedure was to file a motion to recuse. *See Sullivan v. Berliner*, 568 S.W.2d 844 (Tex.1978). They also failed to assert the claimed error by a point on appeal. *See McLeod v. Harris*, 582 S.W.2d 772 (Tex. 1979); *State of California Dept. of Mental Hygiene v. Bank of the Southwest National*

2. We have jurisdiction over the School District's application for writ of error under section 9, article 717m-1.

 Any party to the cause . . . may appeal therefrom to the appropriate court of civil appeals . . . The Supreme Court shall have authority to review, by writ of error or other authorized procedure, all questions of law arising out of the orders and judgments of the courts of civil appeals in the cases, in the manner, time, and form applicable in other civil causes where a decision of the court of civil appeals is not final, . . . .

3. . . . It shall also be the duty of a district judge in whose court an election contest or suit for the removal of a local official is filed to request the Presiding Judge of the Administrative Judicial District to assign a judge of the Administrative District who is not a resident of the county to hold a special or regular term of court in that county in order to dispose of such suits. A district judge shall

request the Presiding Judge to assign a judge of the Administrative District to hear any motions to recuse such district judge from a case pending in his court.

4. Tex.Const. art. V, § 11 provides in relevant part:

 No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case.

5. Art. 15 (1925) provides:

 No judge or justice of the peace shall sit in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case.

*Ass'n,* 163 Tex. 314, 322, 354 S.W.2d 576, 581 (1962).

On the merits, the taxpayers challenge the constitutionality of the statutory scheme stated in article 717m–1 for the trial and disposition of cases which adjudicate the validity of securities issued by a public agency. They claim that the provision which authorizes the dismissal of a suit upon failure to file a bond denies them the right of trial by jury guaranteed by article I, sections 10 and 15 of the Texas Constitution. Taxpayers have not been denied a jury trial on the merits; they have merely been required to post a bond to cover the damages that delay necessarily causes if they fail to prevail on the merits. The statute provides that the court shall require a bond *unless* the contestant "establishes facts which, in the judgment of the court would entitle him to a temporary injunction against the issuance of the securities." Art. 717m–1, § 8. The statute further provides, "Any party to the proceedings shall be entitled to a jury trial on any issue of fact where required by the Texas Constitution." Art. 717m–1, § 7.

Taxpayers say that the "chilling effect" of the bond requirement denies them "substantive and procedural due process" for a number of reasons. (1) It inhibits the exercise of the First Amendment right to petition for redress of grievances by having the "practical effect" of requiring the posting of bond to prosecute a lawsuit. (2) The right to contest an election is a "statutory entitlement sufficient to invoke the protection of the due process clauses" and they are denied due process because they must make an "advance showing" of success and prove elements "not part of their original election contest" to avoid having to post bond. (3) The statutory procedures for setting the bond amount "are speculative, arbitrary, and vague, and violate the substantive due process clauses" because the damages to be bonded against are to include, but not be limited to, future anticipated increases in interest rates and in construction and financing costs. (4) Requiring the posting of a bond to secure the right to be

heard denies procedural due process because the statute "does not contain any procedure for waiving this bond requirement in a case where a litigant is too poor to post such bond." (5) The bond procedure is inconsistent with the provisions of the Texas Election Code. (6) The statute is "internally inconsistent and vague."

Arguments (5) and (6) clearly do not rise to constitutional proportions. The taxpayers' basic right to prosecute a lawsuit does not insulate them from damages caused to the public agency if their suit proves unfounded. They must post bond only if they fail to show entitlement to a temporary injunction. In these bond contest cases, the mere existence of the suit acts as a temporary injunction. Before the bonds can be issued, the school district has to submit "all appropriate proceedings," including the validity of the election, to the Texas Attorney General for his approval. Tex.Educ.Code Ann. § 20.06. The record shows the Attorney General was made a nominal party to respondents' initial suit to prevent approval. Bonds cannot be issued because of the existence of the suit. While the action is pending, the interest rates and construction costs may increase. The testimony of the School District's construction expert was that the costs would continue to increase for the foreseeable future so long as the job is delayed. Since the mere existence of such a suit is likely to cause damages, it was not an unreasonable or arbitrary action for the legislature to provide that a contestant be required to post bond for the damages accruing solely because of the pendency of the suit, to be paid *only if* the contestant should be *unsuccessful* in the suit. We agree with the trial court's determination that a legislative purpose in enacting the statute was to stop "the age old practice allowing one disgruntled taxpayer to stop the entire bond issue by simply filing suit." We find no denial of due process in the legislature's provision of a bond for damages to stop the abuse.

The standards for setting the amount of bond are not "void for lack of certainty" under the constitutional standard

for civil statutes. *Gann v. Keith*, 151 Tex. 626, 253 S.W.2d 413, 417 (1953). Taxpayers assume the court would in some future case construe the statute in such a way that an indigent litigant would be denied an appeal.[6] Even assuming taxpayers' assumption should be correct, we find they lack standing to assert the defect. There is no evidence taxpayers, or any of them, are indigents. An appealing party "may not complain of errors which do not injuriously affect him or which merely affect the rights of others." *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973); *City of San Antonio v. Stumburg*, 70 Tex. 366, 7 S.W. 754 (1888).

 Taxpayers also contend the trial court lacked jurisdiction to sign the dismissal order while they appealed the interlocutory order to post bond. We agree that taxpayers had a right to appeal the order setting bond. Article 717m–1, § 8, provides, "An order of the court fixing the amount of the bond to be posted by an opposing party or intervenor or denying the motion of a public agency or dismissing a party for failure to file a bond may be appealed as provided in Section 9 of this Act." This does not mean, however, that the trial judge had no authority to sign the dismissal order. Article 717m–1 says the opposing party "shall be dismissed" unless he posts the required bond within 10 days after the bond order date. The statute's direction makes no distinction depending on whether the bond order was appealed. It does provide that "[t]he dismissal shall constitute a final judgment . . . *unless* an appeal was taken . . . ." The section provides the appellate court may modify the amount of the bond. If the case is appealed "and the order of the lower court is affirmed or affirmed as modified, and no bond is posted pursuant to this section within 10 days after entry of the appropriate order, no court shall have further jurisdiction" to consider the dismissed contestant's claims.[7] Taxpayers construe the statute to mean that at the end of the appellate process, if the bond order is affirmed, then a contestant has 10 additional days to post bond. They would thus construe "the appropriate order" to mean the final appellate order. Taxpayers' construction is inconsistent with the Act in two respects. First, it would mean the statute directs the trial court to render a dismissal order that would always be meaningless if the bond order were appealed. Second, taxpayers' construction would delay final disposition of the suit until at least 10 days after the interlocutory appeal of the bond order. Numerous references throughout the Act show the legislature intended a speedy final resolution of all contestants' claims. We construe "the appropriate order" to mean the trial court's bond order

---

6. The statute does not expressly deny waiver of the bond requirement to indigents. It provides, "Except as otherwise provided in this Act, the applicable Texas Rules of Civil Procedure and all applicable statutes shall govern the proceedings and appeals held and conducted pursuant to this Act." Art. 717m–1, § 7.

7. Art. 717m–1, § 8 provides, in relevant part: In the event a bond with sufficient surety is not filed by the opposing party or intervenor within 10 days after entry of the order of the court fixing the amount of the bond, the opposing party or intervenor shall be dismissed by the court. The dismissal shall constitute a final judgment of the court, unless an appeal was taken as provided by this Act. No court shall have further jurisdiction of any action to the extent the action involves any issue which was or could have been raised in the proceedings, except to the extent that the issue may have been raised by an opposing party or intervenor as to whom no motion was made hereunder. An order of the court fixing the amount of the bond to be posted by an opposing party or intervenor or denying the motion of a public agency or dismissing a party for failure to file a bond may be appealed as provided in Section 9 of this Act. The court to which any appeal is taken may modify the order of the lower court and may enter the modified order as the final order. In the event no appeal is taken or if the appeal is taken and the order of the lower court is affirmed or affirmed as modified, and no bond is posted pursuant to this section within 10 days after entry of the appropriate order, no court shall have further jurisdiction of any action to the extent it shall involve any issue which was or could have been raised in the proceedings, except to the extent that the issue may have been raised in the proceedings by an opposing party or intervenor as to whom no motion was made hereunder.

 

unless it is modified or reversed on appeal. If the bond order is modified to reduce the bond, or reversed to require a bond for the first time, then contestants have 10 days from that order as the "appropriate order" to post the required bond or suffer dismissal. We realize that this construction may result in simultaneous appeals of the bond order and the final dismissal order, as have occurred in this case, but we believe it is the only construction consistent with the legislature's direction to dispose of public securities validation proceedings under the statute with dispatch.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.