**ATLANTIC RICHFIELD COMPANY, Appellant,**

v.

**Joseph GRUY, Jr., Viggo Gruy, & Dagmar Gruy Cole, Appellees.**

No. 04–85–00188–CV.

Court of Appeals of Texas, San Antonio.

Sept. 17, 1986.

Rehearing Denied Oct. 21, 1986.

Stephen R. Kirklin, Edward J. Howlett, Jr., Houston, for appellant.

Marion E. Williams, Jr., Beeville, for appellees.

Before ESQUIVEL, TIJERINA and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a jury trial resulting in a judgment cancelling the deep well drilling rights of a lessee oil company due to its failure to develop its leasehold below 3,750 feet.

Appellees, Joseph Gruy, Jr., Viggo Gruy, and Dagmar Gruy Cole (Gruys) are the beneficial owners of the original lessor's interest under two leases (hereinafter referred to as "C" and "D" leases). Atlantic Richfield Company (ARCO) is a successor to the original lessee of the lease from depths below 3,750 feet, it having assigned its interest in the lease above that depth.

The original parties executed the leases on June 26, 1944. In 1949, wells were drilled to depths between 2,000 and 3,750 feet and production was obtained. There are currently four wells producing in paying quantities on the "D" lease. The "C" lease has been pooled and is part of a unitization agreement. In 1959, a prior lessee released 640 acres of the "C" lease to the Gruys. Both "C" and "D" leases are for a primary term of ten years and "so

long as oil, gas or any other hydrocarbons, or other minerals, is being produced from said field in paying quantities." There is no dispute that the leases are in effect by production in paying quantities from surface to 3,750 feet. ARCO assigned its interest in the leases from surface to the depth of 3,750 feet, thus leaving approximately 1,888 acres of deep well leasing rights to ARCO.

In December, 1981, the Gruys, through their attorney, informed ARCO that it had breached its implied and express obligation to fully develop the leased premises below 3,750 feet. They advised ARCO that if it did not commence drilling within 60 days, legal action would follow. ARCO did not drill within 60 days. In April 1982, the Gruys instituted suit for cancellation of both leases and for damages. The trial was to a jury which found that ARCO failed to develop the area below 3,740 feet with due diligence. It also found ARCO failed to develop the leased premises as a reasonably prudent operator would have developed the property under the same or similar circumstances. On February 7, 1985, the trial court entered judgment terminating both leases.

■ On appeal ARCO contends there was no evidence or, in the alternative, insufficient evidence, to support either finding. A "no evidence" assertion requires the court to consider only evidence tending to support the finding, viewing the evidence in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). After reviewing the record, we agree that there was no evidence to support either of the jury's findings.

■ After discovery of hydrocarbons, a lessee's obligation to develop is measured by the rule of reasonable diligence or that of a prudent and diligent operator. The lessee is not required to further develop the leasehold unless there is a reasonable expectation of profit not only to the lessor

but to the lessee. *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 695 (1959); *Felmont Oil Corp. v. Pan American Petroleum Corp.*, 334 S.W.2d 449, 455 (Tex.Civ. App.—El Paso 1960, writ ref'd n.r.e.).

The Gruys introduced no evidence that development below 3,750 feet would lead to any discovery of hydrocarbons. The only evidence introduced in the trial that would indicate lack of diligence on the part of ARCO was that there had been no drilling for new wells since 1952 or 1953, and that ARCO did not ask the Gruys for permission to conduct seismic testing until 1983.

A similar fact situation occurred in *Clifton*. In 1940, Clifton executed mineral leases on 350 acres. In time, 40 acres of the tract was in production. Lessor Clifton brought suit against lessee Koontz, alleging among other things, that Koontz had breached an implied covenant to develop the property for minerals at a different depth than that in production. Clifton failed to present evidence that production of oil or gas could be produced in paying quantities at the undeveloped depth. The Court stated:

> While it is true that each separate stratum or horizon would be entitled to separate development, yet it is equally true that the burden rests upon the lessor to prove that the producing stratum required additional wells, or that strata different from that from which production is being obtained, in reasonable probability exist, and that by the drilling of additional wells there would be a reasonable expectation of profit to the lessee. Under such circumstances, the lessee's obligation was to development is measured by the rule of reasonable diligence or what an ordinarily prudent and diligent operator would do, and he is not required to continue in the performance of these duties or to engage in the performance of such implied duties unless there is a reasonable expectation of profit, not only to the lessor, but also to the lessee.

*Clifton*, 325 S.W.2d at 695. The Gruys contend that the implied covenant to devel-

op enunciated in *Clifton* is not applicable since the leases in question contain a paragraph which provides, "After the discovery of oil, gas or other minerals on said land, the lessee shall develop said land with due diligence until said land shall have been fully developed." The court is not persuaded.

While the law recognizes an implied covenant out of necessity, *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039 (1928), the Gruys have not cited any authority that an express agreement to develop the land with "due diligence" calls for a different standard of conduct than that set forth in *Clifton.* While the Gruys' lease expressly states the lessee must develop the lease with "due diligence," it is silent as to what constitutes due diligence. We believe the case of *Texas Pacific Coal & Oil Co. v. Barker*, 117 Tex. 418, 6 S.W.2d 1031 (1928) is applicable here. In that case, the lease provided that the lessor would provide "due protection" against wells on adjacent property while silent as to how the protection would be given or if the care exacted should be ordinary care. The Supreme Court held that where a lease is silent as to the degree of due protection with which the lessee must exercise the law shall require reasonable protection and care.

The court quoted from SUMMERS' OIL & GAS, § 132, p. 424:

> Whenever a duty to perform an act or series of acts is fixed by contract or implication of law, and the time, manner, and extent of performance is not fixed, the law implies that such act or acts shall be performed within a reasonable time and with reasonable diligence. Where, therefore, oil and gas leases do not state the time, manner, and extent of performance of express and implied duties to test, develop, and protect the land—the courts have of necessity tested the lessee's performance by the standards of reasonable time and reasonable diligence,

*Texas Pacific*, 6 S.W.2d at 1034–1035.

■ We are of the opinion that an express agreement in a lease to develop with

"due diligence" provides the same standard as that required in an implied covenant to develop. It is a standard of reasonable diligence or what an ordinarily prudent and diligent operator would do. *Clifton*, 325 S.W.2d at 695; *United States Steel Corp. v. Whitley*, 636 S.W.2d 465, 471 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.).

Moreover, it is evident from the Gruys' correspondence and pleadings that the standard of conduct intended by the parties was that of a reasonably prudent operator. In a letter dated December 22, 1981, the Gruys' attorney informed ARCO that it was "obligated to develop diligently and fully in all formations underlying the lands covered in those leases as a reasonably prudent operator" and that "this implied covenant on the part of ARCO as lessee— was expressly agreed to in paragraph 19 of the captioned leases."

The Gruys' pleadings allege "Both of Said Leases, contain express and implied covenants which obligate the Lessee, and/or any assigns, to develop the subject acreage as a reasonable prudent operator." In construing an agreement, the cardinal rule of construction is to ascertain the intention of the parties as expressed in the instrument. *United States Steel Corp.*, 636 S.W.2d at 469.

As evidence that ARCO failed to develop, the Gruys ask that we consider that ARCO has drilled no wells since it acquired the leases in 1960 and that ARCO is holding a large tract of land for speculative purposes when a relatively small portion of the land contains the producing wells. They urge us to adopt the law prevailing in Oklahoma, which holds that when the lessee fails to develop the leased premises within a reasonable time after production has been obtained, the lessee must either forfeit the lease or drill. *Doss Oil Royalty Co. v. Texas Co.*, 192 Okl. 359, 137 P.2d 934, 938–939 (1943). To support the argument they cite the dictum in *Clifton* which states:

> However, it should be noted that we do not have a factual situation where the lease covers several thousand acres and

an effort is being made to hold such vast acreage by showing production from a comparatively small area. Neither are we confronted with a situation where an unreasonably long length of time has elapsed since the last development of the leased premises. Therefore, we do not pass upon these questions.

*Clifton,* 325 S.W.2d at 696.

The Gruys also cite *Sinclair Oil & Gas Co. v. R.B. Masterson,* 271 F.2d 310 (5th Cir.1959), *cert. denied,* 362 U.S. 952, 80 S.Ct. 864, 4 L.Ed.2d 870 (1960), in support of their position that failure to further develop the premises over an extended period of time may be grounds for cancellation. However, *Sinclair* has been expressly rejected in Texas. *Felmont,* 334 S.W.2d at 458. Furthermore, the *Sinclair* court found "that it is fairly probable that some of the undeveloped areas of the leases will be found to be productive of oil, but the number and extent of such areas can be determined only by drilling." In this case there was no evidence of hydrocarbons below 3,750 feet.

▮ While the Gruys argue they sought further and full development, in fact they sought to enforce a duty to explore separate from ARCO's duty to develop. There is no express obligation in the lease for ARCO to explore. Nor is there any implied obligation to explore as distinguished from the duty to develop. *Clifton,* 325 S.W.2d at 696. In response to the contention that there was an implied covenant to explore, the Court wrote:

> This theory is untenable and is diametrically opposed to our established 'prudent operator' rule where expectation of profit is an essential element. (citation) We decline to follow the theory advanced that there is an implied covenant to explore as distinguished from an implied covenant to develop.

*Clifton,* 325 S.W.2d at 697.

We Acknowledge that the argument that ARCO's failure to drill in over 26 years is grounds to cancel the lease is persuasive. Nevertheless, the unrefutable fact remains that a "prudent operator" would not drill

absent some evidence the drilling would be profitable.

The judgment of the trial court is reversed and judgment is rendered that the leases which are the subject of this suit remain in force. We find that it is not necessary to address appellant's other points of error and appellees' cross points.

TIJERINA, J., dissents without opinion.