**SUN EXPLORATION & PRODUCTION COMPANY and Amoco Production Company, Appellants,**

v.

**Ocie R. JACKSON, et al., Appellees.**

**No. 01–85–0240–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 9, 1987.

Leo J. Hoffman, Stuart C. Holliman, Strasburger & Price Dallas, for appellants.

Dick Watt, John D. White, Watt & White, Houston, Ernest E. Smith, III, Austin, for appellees.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

Opinion on Rehearing

EVANS, Chief Justice.

Both Sun and the Jacksons have filed motions for rehearing. We first consider the Jacksons' motion.

The Jacksons contend, in one point of error, that we erred in holding that the trial court's conditional decree of cancella-

tion imposed an unreasonable burden on Sun. The Jacksons argue that to give Sun any more time to decide whether to fulfill the terms of the conditional decree would, under the circumstances, be unjust and inequitable, particularly in the face of Sun's testimony at trial indicating that it did not intend to do additional drilling. We adhere to the views expressed in our original opinion that the matter should be remanded to the trial court for further consideration. The Jacksons' motion for rehearing is overruled.

Sun's motion for rehearing, which contains 11 points of error, raises a new issue in the case. In its first point of error, Sun contends that the trial judge, the Honorable Carroll E. Wilborn, Jr., was constitutionally disqualified to preside over the case and that his judgment is void. In the alternative, Sun contends that he should be recused and that the cause should be remanded so that Sun may have the opportunity to present its motion for Judge Wilborn's recusal.

Under this point, Sun suggests that Judge Wilborn is a first cousin of Guy C. Jackson, III, one of the Jacksons' attorneys in the case, and therefore is connected to the Jacksons' attorney by consanguinity in the second degree. Sun's motion also asserts that Judge Wilborn is connected to all the Jacksons by consanguinity in the fourth degree, because their common ancestor, Humphrey Jackson, was the great-grandfather of Ocie R. Jackson, the senior living member of the Jackson group and the great-great-grandfather of Judge Wilborn. Sun attaches to its motion copies of a 1934 affidavit of heirship and other probate records, which it alleges are filed of record in the Office of the County Clerk in Chambers County, Texas. Sun further alleges that all of these matters represent "newly-discovered evidence" that was not known to Sun at the time of the trial or at the time of the initial proceedings in this Court.

Tex. Const. art. V, sec. 11 provides, in pertinent part:

No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case.

Tex.Rev.Civ.Stat.Ann. art. 15 (Vernon 1969) provides:

No judge or justice of the peace shall sit in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case.

A disqualified judge is incapacitated from taking any action in a cause that requires the exercise of judicial discretion, and any order or judgment of a disqualified judge involving judicial discretion is void. *Buckholts Independent School District v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982); *Postal Mutual Indemnity Co. v. Ellis,* 140 Tex. 570, 574, 169 S.W.2d 482, 484 (1943). The constitutional disqualification of a judge cannot be waived, and the disqualification issue may be raised either before or after the judge's action. *Buckholts,* 632 S.W.2d at 148; *Fry v. Tucker,* 146 Tex. 18, 26–27, 202 S.W.2d 218, 221–22 (1947).

Sun contends that Judge Wilborn was constitutionally disqualified to preside at the trial of the case, because (a) he and one of the Jacksons' attorneys, Guy C. Jackson, III, are first cousins, related within the second degree, and (b) Guy C. Jackson, III, while not a named party in the case, had such a direct and substantial interest in the subject matter that he should, in legal effect, be deemed a party. Sun cites cases holding, in effect, that disqualification exists where the judge, in his discretion, approves or sets attorney's fees for an attorney related to him within the designated degree. *See, e.g., Postal Mutual Indemnity,* 140 Tex. at 575–76, 169 S.W.2d at 485; *Indemnity Insurance Co. of North America v. McGee,* 163 Tex. 412, 356 S.W.2d 666 (1962); *Dow Chemical Co. v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 568 (1962). *Compare F.M.C. Corp. v. Burns,* 444 S.W.2d 315 (Tex.Civ.App.—San Antonio 1969, no writ) (where the trial judge did not have to

pass on the contingent fee contract or set the fee); *Dow Chemical Co.,* 357 S.W.2d at 568; *see also Niles v. Dean,* 363 S.W.2d 317 (Tex.Civ.App.—Beaumont 1962, no writ).

The Jacksons respond to Sun's first point of error with allegations that (1) their attorney, Guy C. Jackson, III, did not participate in the trial of the case and merely provided logistical support for their trial attorneys and the Jacksons; (2) his name was added to the pleadings only so that he would be kept apprised of the progress in the case; (3) the Jacksons' trial attorneys, Watt & White, and their local attorney, Guy C. Jacksons, III, would regularly bill the Jacksons for their respective services during the course of the case, and were paid on a regular basis; (4) Guy C. Jackson, III, would have been fully paid regardless of the action of the trial judge or the outcome of the case; (5) the Jacksons' pleadings sought an award to the Jacksons for the amount of attorney's fees expended, and asked that the Jacksons, not the attorneys, be awarded such fees; (6) Sun's counsel knew that the attorney's fees awarded to the Jacksons did not include any fees attributable to the services of Guy C. Jackson, III, or any other counsel except the trial counsel, Watt & White; and (7) Sun knew, or should have known, through its attorneys and local employees, of the relationship between Judge Wilborn and the Jacksons, and that its motion was devoid of any explanation regarding its failure to raise the disqualification issue at an earlier time.

Attached to the Jacksons' motion is the affidavit of John D. White, one of the Jackson's trial attorneys, and the affidavit of their local counsel, Guy C. Jackson, III.

In White's affidavit, he states that Guy C. Jackson, III, along with Hubert Oxford, III, of Beaumont, and William G. Rosch, III, of Houston, appeared on the pleadings in the case as attorneys for the Jacksons for notice purposes so that they would be properly apprised of all the proceedings and so that they could convey information to various members of the Jackson family. He stated that none of these attorneys participated in the trial or in any of the pretrial activities, and that Guy C. Jackson, III, assisted in providing logistical support for the parties, witnesses, and attorneys in Anahuac during trial, and also assisted in reviewing the jury panel list. White stated that following the jury's verdict, he discussed the amount of attorney's fees with Sun's counsel, and an agreement was reached on the amount of attorney's fees that each side would ask the judge to award and on the reasonableness of such amounts. According to White, it was agreed that neither side would consider attorney's fees incurred by either local counsel or other attorneys assisting in the litigation and that the Jacksons would submit the Watt & White fees, and Sun would submit the Strasburger & Price fees in computing the amounts they would respectively submit to the judge. White stated that the attorney's fee of $284,232 awarded by the court reflected the Watt & White fees actually incurred and estimated to be incurred prior to the entry of judgment, and did not include any attorney's fees charged by Guy C. Jackson, III, or any of the other non-trial attorneys. White further stated that this fact was known to opposing counsel prior to the hearing for entry of judgment.

The affidavit of Guy C. Jackson, III, similarly states his role as an attorney for the Jacksons. He denied that he was pecuniarily interested either in the outcome of the case or in the specific award of attorney's fees. He said he regularly billed the Jackson family for his services and that he would have been fully paid for those services regardless of how the trial judge might rule in the case. He said it was well-known in Anahuac and Chambers County that he was related to the Jackson family and to Judge Wilborn, and that this fact was known to Sun employees in Chambers County and to one of Sun's Beaumont attorneys employed in the case. He had assumed that the relationship was known by Sun, and he expressed his view that it would have been simple for Sun's attorneys to ascertain the relationship by any sort of reasonable inquiry.

Sun concedes that Guy C. Jackson, III, was not one of the Jacksons' lead trial attorneys, but it argues that he was obviously an attorney in the case and that he had a direct pecuniary interest in the outcome of the case. Thus, the question is whether Sun demonstrated that Guy C. Jackson, III, was "so directly interested in the subject matter of the lawsuit as to make him a 'party' within the meaning of the constitution and statute." *Winston v. Masterson,* 87 Tex. 200, 27 S.W. 768 (1894); *Dow Chemical Co.,* 357 S.W.2d at 568. The resolution of this question requires a factual determination, which unfortunately was not done at the trial court level. The record before us reflects some facts that appear to be uncontroverted: (1) Judge Wilborn and Guy C. Jackson, III, are first cousins; (2) Guy C. Jackson, III, was listed on the pleadings as an attorney for the Jacksons; (3) Guy C. Jackson, III, regularly billed the Jacksons and received payment of fees for his services; (4) an award of attorney's fees was made to the Jacksons, based upon some understanding between counsel about reasonable attorney's fees that were attributable to the services of the Jacksons' trial counsel, Watts & White. But aside from these uncontroverted "facts," it appears that Sun's assertions constitute mere conclusionary allegations in an unverified motion.

■ It has been held that where the issue of a judge's disqualification is first raised on appeal, the fact of disqualification cannot be established by an affidavit dehors the record, but rather must be determined from the record. *City of Austin v. Nalle,* 85 Tex. 520, 521, 22 S.W. 960, 961 (1893); *Adams v. State,* 90 Tex.Crim.R. 65, 233 S.W. 844 (1921). It has also been held that where the question of disqualification was not urged in the trial court, the issue could not be raised by an original affidavit for the first time in the appellate court. *Kaufman County v. Gaston,* 273 S.W. 273, 274 (Tex.Civ.App.—Beaumont 1925, no writ); *compare Texas Co. v. Tijernia,* 301 S.W.2d 478 (Tex.Civ.App.—San Antonio 1957, no writ) (where the fact of disqualification was shown by unchallenged affidavit and the trial judge's own certification of his

disqualification). Further, where the fact of disqualification does not appear from the record, unverified allegations will not suffice on appeal. *See Kahanek v. Galveston H. & S.A. Railway Co.,* 72 Tex. 476, 10 S.W. 570 (1889). Of course, where the record itself shows a judge's disqualification, the appellate court may determine the issue, either by applying the law to indisputed facts or by abating the cause to the trial court for an evidentiary hearing. *Gamez v. State,* 644 S.W.2d 879 (Tex.App.—San Antonio 1982, pet. ref'd).

■ In the instant case, the unverified allegations in Sun's motion that Guy C. Jackson, III, had a substantial interest in the outcome of the suit, and in the specific award of the attorney's fees, were expressly controverted by Jacksons' sworn denial. Indeed, the uncontroverted statements in the affidavits attached to the Jacksons' response to Sun's motion lead to only one conclusion, i.e., that Guy C. Jackson, III, had no direct interest in the Jacksons' recovery, or in the attorney's fees awarded, and that the court's judgment would not in any way affect his pecuniary interest. Under the circumstances reflected by the verified documents in the record, Guy C. Jackson, III, would not be considered a "party" to the suit. *See Norris v. Cox,* 131 S.W.2d 1028 (Tex.Civ.App.—El Paso 1939, writ dism'd judgmt cor.).

We hold that Sun has failed to demonstrate in the record before this Court that the trial judge was constitutionally disqualified to preside over the cause.

Sun also contends that Judge Wilborn's relationship to all of the members of the Jackson family by consanguinity in the fourth degree should require his recusal in the case, and that we should remand the case to the trial court in order that Sun may present a motion for Judge Wilborn's disqualification or recusal pursuant to Tex. R.Civ.P. 18a. *See also* Tex.Gov't Code Ann. sec. 74.036 (Vernon Supp.1986).

In support of this argument, Sun refers to Texas Supreme Court, Code of Judicial Conduct, Canon 3, part C(1) (1974) (amended 1976), which provides that "a judge

should disqualify himself in a proceeding in which his impartiality might be reasonably be questioned...." Sun argues that Canon 3, part C(1), provides an additional ground for judicial disqualification in Texas, and that since its adoption, a judge should be deemed disqualified where his "impartiality might reasonably be questioned." Sun cites three cases in support of this argument. *McLeod v. Harris*, 582 S.W.2d 772 (Tex.1979); *Manges v. Garcia*, 616 S.W.2d 380, 382 (Tex.Civ.App.—San Antonio 1981, no writ); *Robb v. Robb*, 605 S.W.2d 390, 391 (Tex.Civ.App.—El Paso 1980, no writ). Sun also argues that the issue of a judge's impartiality raises a significant due process question under the Fourteenth Amendment to the United States Constitution.

■ The authorities relied on by Sun do not stand for the proposition that "impartiality" now constitutes an additional basis for mandatory judicial disqualification. As we understand Canon 3C, it provides that trial judges *should* recuse and disqualify themselves in the situation specified in the canon, but are not required to do so. *See* Calvert, *Disqualification of Judges*, 47 Tex.B.J. 1330 (1984); Kilgarlin and Bruch, *Disqualification and Recusal of Judges*, St. Mary's L.J. 599–652 (1986); *River Road Neighborhood Association v. South Texas Sports, Inc.*, 673 S.W.2d 952, 953 (Tex.App.—San Antonio 1984, no writ). We accordingly hold that Judge Wilborn's fourth degree relationship to those members of the Jackson family who are parties to the litigation does not in itself constitute a basis for his disqualification.

■ We further hold that the issue of Judge Wilborn's recusal was waived by Sun's failure to raise the issue by motion in the trial court. *See Humble Exploration Co. v. Browning*, 677 S.W.2d 111, (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Buckholts Independent School District*, 632 S.W.2d at 148; Tex.R.Civ.P. 18a. We therefore overrule Sun's motion for remand of the case to the trial court for consideration of that issue.

We also overrule Sun's points of error two through eleven.

Under Sun's points of error two through eleven, it continues to argue that it had no duty to drill exploratory development wells; that the evidence is legally and factually insufficient to support the jury's finding that it failed to perform such duties; that such finding conflicts with the jury's finding that it reasonably developed the Jackson lease; that the jury's finding that Sun failed to reasonably explore the leased premises is not actionable under Texas law; and that the trial court abused its discretion in rendering a judgment that unconditionally canceled part of the Jackson lease. Although Sun makes able arguments in support of these contentions, and expands upon the arguments made in its original submission, we believe that our original opinion adequately disposes of the issues presented.

Sun makes reference to the recent decision of *Atlantic Richfield Co. v. Gruy*, 720 S.W.2d 121 (Tex.App.—San Antonio 1986, no writ) in support of its position that it had no duty to drill additional wells to test strata that were not already known to be productive of oil or gas under the leased premises. Sun contends that the *Gruy* decision, which is consistent with the rule of *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684 (Tex.1959), is inconsistent with our opinion in this case. We disagree with Sun's interpretation of the *Gruy* decision. In that case, the court found that there was *no* evidence that additional drilling below the producing strata would lead to discovery of hydrocarbons, and that except for the lessee's failure to drill new wells for a period of years, there was no showing of any lack of diligence on the lessee's part in the development of the lease. The *Gruy* court merely applied the *Clifton* rule to the facts of the case, holding that the lessee was not required to further develop the leasehold unless there was a reasonable expectation of profit.

In the instant case, the jury found, in effect, that Sun failed to drill additional wells to test strata which was not then known to be productive, but which would in reasonable probability produce hydrocarbons with a reasonable expectation of prof-

it. We have found that the evidence is legally sufficient to support the jury's finding, and that its finding is not contrary to the overwhelming preponderance of the evidence as to be clearly wrong. Thus, we find our decision to be in line with the rule enunciated in *Clifton* and followed by the court in *Gruy.*

We overruled both motions for rehearing.