COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-228-CV

 

 

IN THE INTEREST OF L.K.M., A MINOR CHILD                                          

 

                                              ------------

 

           FROM THE 231ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Munroe Justin M. appeals the trial
court=s order
terminating his parental rights to his biological daughter, L.K.M.  We affirm.








L.K.M. is the five-year-old daughter of Munroe
and Sara Johnston.  Munroe filed an
original petition in suit affecting the parent-child relationship on October
19, 2004, seeking to be appointed L.K.M.=s sole managing
conservator.  Sara responded with a
counterpetition requesting the court to appoint her as L.K.M=s joint
managing conservator with primary possession and the right to decide domicile,
with standard visitation rights for Munroe. 
On January 5, 2005, the trial court=s
associate judge ordered the preparation of a social study by Family Court
Services and ordered possession of L.K.M. to alternate between Munroe and Sara
every two weeks. 

After several months, Sara filed an amended
counterpetition alleging that Munroe had a history of committing family
violence and requesting that the court appoint her as L.K.M=s sole
managing conservator.  On November 30,
2005, Sara filed her first supplement to the amended counterpetition adding new
tort claims against Munroe and his mother, Sofia Els M., including claims of
assault and false imprisonment, conspiracy to commit assault and false
imprisonment, and interference with custody. 
She also asserted claims against Munroe for intentional infliction of
emotional distress and slander by filing a false report of abuse or
neglect.  Sara requested the court to
issue a protective order against Munroe and to terminate his parental rights to
L.K.M.

The next day, December 1, 2005, the trial court
heard the parties= case.  Both Munroe and Sara appeared in person and
were represented by attorneys.  The
judgment, signed on March 29, 2006, and titled AAgreed
Order of Termination,@ states that a court reporter
made a record of the testimony and contains the following findings:








The court finds that each
of the parties hereto have voluntarily entered into this Agreed Order of
Termination and that each of the parties consent, stipulate and agree to
all of the terms and conditions as stated in this Agreed Order of
Termination and each party states that they are entering into this Agreed
Order of Termination voluntarily and that neither of them is under any type
of coercion, duress and/or undue influence.

 

In its order, the trial court terminated Munroe=s
parent-child relationship to L.K.M., appointed Sara as L.K.M.=s sole
managing conservator, and recited that Sara had nonsuited the torts pleaded in
her first supplement to the amended counterpetition.  This order is signed by the trial court
judge, L.K.M.=s attorney ad litem, and Sara
and her attorney, but it is not signed by Munroe or his attorney.  Munroe filed a motion for new trial, which
was overruled by operation of law on June 12, 2006, seventy-five days after the
order was signed.  See Tex. R. Civ. P. 329b(c).

Although the motion for new trial had already
been overruled by operation of law, the trial court signed an order denying
Munroe=s motion
for new trial on June 29, 2006.  The
order awards Sara $6,000 in attorney=s fees
plus additional attorney=s fees for a successful defense
of any appeals.  It also orders Sara and
Munroe each to pay $2,500 in attorney=s fees
to L.K.M.=s attorney ad litem.  Munroe now appeals.

 

 








A.     Claim of Indigence

Munroe complains in his fifth issue that the
trial court erred by denying him pro bono counsel after he became
indigent.  Munroe filed an affidavit of
indigence on November 9, 2006, a month after we had granted his attorney=s motion
to withdraw on October 9, 2006, and after we had twice contacted him on
September 20, 2006, and again on October 11, 2006, about his failure to pay the
court reporter for preparation of the reporter=s
record.[2]








We directed the trial court to hold a hearing to
determine whether Sara and the court reporter received timely notice of Munroe=s
affidavit of indigence.  The trial court
held the hearing on December 8, 2006, and found that Munroe had failed to give
Sara timely notice of the filing of his affidavit of indigence and that the
court clerk had failed to give timely notice of the filing to the court
reporter.  Accordingly, we permitted Sara
and the court reporter to bring out-of-time contests to Munroe=s
affidavit.  Ten days later, the trial
court held a hearing on the contests; the court sustained the contests to
Munroe=s
affidavit of indigence, ordered that Munroe must pay or give security for the
costs of appeal, and ordered that the court reporter was not required to
prepare the appellate record without prepayment.  The trial court further denied Munroe=s
request for appointed counsel.

Munroe challenges the trial court=s order
on appeal, arguing that he sufficiently established his claim of indigence to
the trial court.  The test for indigence
is whether a preponderance of the evidence shows that the party would be unable
to pay costs Aif he really wanted to and made
a good-faith effort to do so.@ Griffin
Indus., Inc. v. Thirteenth Court of Appeals, 934 S.W.2d 349, 351 (Tex.
1996) (orig. proceeding) (quoting Allred v. Lowry, 597 S.W.2d 353, 355
(Tex. 1980)).  If a contest is filed, the
party who filed the affidavit of indigence must prove the affidavit=s
allegations.  Tex. R. App. P. 20.1(g). 
We review the trial court=s ruling
on an indigency determination under an abuse of discretion standard.  White v. Bayless, 40 S.W.3d 574, 576
(Tex. App.CSan Antonio 2001, pet. denied).








At the conclusion of the December 8 hearing on
the notice issue, the trial court informed all parties that it would hold
another hearing to consider evidence relating to the contests and instructed
Munroe to bring to that hearing copies of his income tax returns for the years
2004 and 2005 as well as any evidence of income earned in the year 2006,
including bank statements. Despite this explicit instruction from the court, Munroe
did not bring any of the documents requested, nor did he bring any other
evidence besides his own self-serving testimony to establish his claim of
indigence.  The court found that Munroe
had failed to meet his burden of establishing indigence, observing that Athe
allegations or statements that [Munroe] made were not supported by any
documentary evidence, whatsoever, even though I had specifically instructed him
to bring documents that would shed some light of his financial condition.@








We hold that, because Munroe failed to support
his claim of indigence with evidence of his lack of income or assets, the trial
court did not abuse its discretion by concluding that Munroe did not meet his
burden of proving by a preponderance of the evidence that he would be unable to
pay costs Aif he really wanted to and made
a good-faith effort to do so.@ Griffin
Indus., 934 S.W.2d at 351; see also Tex. R. App. P. 20.1(g). 
Furthermore, because Munroe was not indigent, the trial court=s denial
of his request for appointed counsel did not violate his right to due process.  Cf. Tex.
Fam. Code Ann. ' 107.013 (a)(1) (Vernon Supp.
2007) (requiring, in a termination suit filed by a governmental entity, the
appointment of an attorney for an indigent parent who responds in
opposition to the termination); M.L.B. v. S.L.J., 519 U.S. 102, 128, 117
S. Ct. 555, 570 (1996) (holding that due process concerns prohibit the
dismissal for nonpayment of record preparation costs of an indigent mother=s appeal
of an order terminating her parental rights); Lassiter v. Dep=t of
Social Servs., 452 U.S. 18, 31-32, 101 S. Ct. 2153, 2162
(1981) (holding that the trial court must make the decision of whether due
process calls for the appointment of counsel for indigent parents in
termination proceedings on a case-by-case basis).  We overrule Munroe=s fifth
issue.

B.     Lack of Reporter=s Record

After the trial court sustained the contests to
Munroe=s claim
of indigence, we again notified him on January 5, 2007, that if he failed to
pay for the reporter=s record on or before February
5, 2007, this court may consider and decide only those issues that do not
require a reporter=s record for a decision.  See Tex. R.
App. P.
37.3(c).  Munroe never paid for the
reporter=s
record, so we informed him on February 8, 2007, that this court would consider
and decide only those issues that do not require a reporter=s record
for a decision.  See id.








Munroe argues that he did provide the reporter=s record
of trial as an exhibit to his appellate brief. 
This exhibit was struck by court order, however, and will not be
considered by the court in this appeal. 
Furthermore, we cannot consider documents attached as appendices to
briefs and must consider a case based solely upon the record filed.  WorldPeace v. Comm=n for
Lawyer Discipline, 183 S.W.3d 451, 465 n.23 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied) (refusing to consider excerpt from a reporter=s record
that appellant attached to its brief when no official reporter=s record
was before the court).  The remainder of
Munroe=s issues
require a reporter=s record for their resolution,
so we are unable to evaluate most of his complaints on appeal; to the extent
that we can evaluate his issues, we do so on the record before us.

1.     Agreed Order of Termination








Munroe argues in his first issue that the trial
court erred by signing the termination order because Munroe agreed to
termination under duress; he claims that he was Ablackmailed@ into
agreeing to the termination by the Amalicious/false@ tort
claims in Sara=s counterpetition, financial
pressure, and fear of deportation.  Without a reporter=s
record, we cannot evaluate his claims of duress; instead, the only evidence in
the record on this issue is the trial court=s
finding that Aeach party states that they are
entering into this Agreed Order of Termination voluntarily and that
neither of them is under any type of coercion, duress and/or undue influence.@[3]  When a reporter=s record is not
requested, we indulge every presumption in favor of the trial court=s findings.  Bryant v. United Shortline Inc. Assurance
Servs., N.A., 972 S.W.2d 26, 31 (Tex. 1998); Peacock v. Bradshaw,
145 Tex. 68, 194 S.W.2d 551, 554 (1946). 
Accordingly, we do not consider Munroe=s
allegations of malicious or false claims and duress.  We overrule Munroe=s first
issue.

In his second issue, Munroe complains that the
trial court erred by relying on unsubstantiated hearsay evidence from an
unreliable witness contained in a ACase
Report,@ which
presumably is the social study that the trial court ordered Family Court
Services to prepare.  Again, because we
have no reporter=s record of the trial, we must
presume that any reliance on this report by the trial court was proper.  See Bryant, 972 S.W.2d at 31.  We overrule Munroe=s second
issue.








Munroe further challenges in his sixth and
seventh issues the legal and factual sufficiency of the evidence to support the
trial court=s findings that there was clear
and convincing evidence establishing statutory grounds for termination and
showing that termination was in the child=s best
interests, complaining that termination must be based on a written, not oral,
relinquishment of parental rights.

While it is true that a parent=s
voluntary relinquishment of a child can constitute legal grounds for
termination, it is not the only ground for termination prescribed by
statute.  See Tex. Fam. Code Ann. ' 161.001
(Vernon Supp. 2007).  Further, the
termination order shows that the trial court did not rely upon Munroe=s oral
relinquishment to establish grounds for termination; instead, the court found
clear and convincing evidence of other grounds for termination in its judgmentCthat
Munroe knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well‑being of
the child, and that he engaged in conduct or knowingly placed the child with
persons who engaged in conduct which endangered the physical or emotional well‑being
of the child.  See id. '
161.001(1)(D), (E).  The trial court also
found by clear and convincing evidence that termination of the parent-child
relationship between Munroe and L.K.M. was in L.K.M.=s best
interest.  See id. ' 161.001(2).








In conducting a sufficiency review, our inquiry
is whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parent violated subsections (D) and (E) of
section 161.001(1) and that the termination of the parent=s
parental rights would be in the best interest of the child.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005); In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).  Because there is no reporter=s record
showing the evidence presented at trial, we must presume that the evidence
supported the trial court=s termination findings.  See Bryant, 972 S.W.2d at 31.  We overrule Munroe=s sixth
and seventh issues.

2.     Allegations of Unethical Counsel

In his third issue, Munroe makes various
allegations of unethical conduct on the part of opposing trial counsel, none of
which are substantiated by the record. 
To obtain reversal, Munroe must first show that the trial court made an
error of law.  See Tex. R. App. P. 44.1(a).  The record does not show that the
complained-of errors occurred.  We
overrule Munroe=s third issue.

3.     Disqualification/Recusal of Trial Court
Judge








In his fourth issue, Munroe complains that the
trial court judge should have been disqualified or recused from presiding over
his case.  Munroe alleges that, during
the hearing on his motion for new trial, the trial court judge acknowledged
that he and Sara=s counsel were business partners
and good friends who biked together on weekends and during vacations.  He claims that he did not move for the judge=s
recusal at that point because he Acould
not afford to repeat the whole scenario in another court by another Judge.@  Recusal may be waived if it is not raised by
a proper motion.  McElwee v. McElwee,
911 S.W.2d 182, 186 (Tex. App.CHouston
[1st Dist.] 1995, writ denied).  Because
Munroe claims that he was aware of facts raising the recusal issue but failed
to bring the issue in the trial court, he has waived his right to complain of
the judge=s failure to recuse
himself.  See id.

Unlike recusal, however, disqualification cannot
be waived.  Id.  If a judge is disqualified under the Texas
Constitution, he is without jurisdiction to hear the case; therefore, any
judgment he renders is void and a nullity. 
Id. (citing Buckholts ISD v. Glaser, 632 S.W.2d 146, 148
(Tex. 1982)). Munroe argues that the judge should have disqualified himself due
to his personal and business relationship with Sara=s
counsel and due to his being connected to Sara=s
counsel by affinity.  Again, however,
Munroe has not provided us with a record of the proceeding at which these
alleged statements regarding the disqualification issue were made.  








When the issue of a judge=s
disqualification is first raised on appeal, the fact of disqualification must
be determined from the record.  Sun
Exp. & Prod. Co. v. Jackson, 729 S.W.2d 310, 314 (Tex. App.CHouston
[1st Dist.] 1987) (op. on reh=g), rev=d on
other grounds, 783 S.W.2d 202 (Tex. 1989).  If the fact of disqualification does not
appear from the record, unverified allegations will not suffice on appeal.  Id. 
Nothing in the record establishes the bare, unverified contentions of
the judge=s relationship and affinity with
Sara=s
counsel that Munroe asserts for the first time on appeal.  Therefore, we overrule Munroe=s fourth
issue.

4.     Denial of Motion for New Trial

Finally, in his eighth issue, Munroe complains
that the trial court violated his due process rights of Anatural
justice and the right to be heard@ by
denying his motion for new trial.  We
review a trial court=s denial of a motion for new
trial for an abuse of discretion.  In
re R.R., 209 S.W.3d 112, 114 (Tex. 2006). 
In his motion for new trial, Munroe asserted that he agreed to the
termination of his parental rights under duress and as a result of blackmail
and extortion based on the claims in Sara=s new
counterpetition.  He also contended that
there was no statutory basis for terminating his parental rights.

We have already addressed and overruled these
complaints on appeal, and Munroe provides us with no record from the hearing on
the motion for new trial that would add anything further to our analysis.  Accordingly, we hold that the trial court did
not abuse its discretion by denying Munroe=s motion
for new trial, and we overrule his eighth issue.








Having overruled all of Munroe=s issues
on appeal, we affirm the trial court=s
termination order.

 

 

PER
CURIAM

 

PANEL F:    MCCOY,
J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DELIVERED: January 10,
2008











[1]See Tex. R. App. P. 47.4.





[2]Sara complains that this
affidavit of indigence was not timely filed because Munroe did not file it in
the appellate court with or before the notice of appeal, nor did he seek an
extension of time to file his affidavit of indigence. See Tex. R. App. P. 20.1(c)(1), (3).  However, the Texas Supreme Court has held
that a failure to file an affidavit of indigence with or before the notice of
appeal is merely a formal defect, which the appellant is allowed a reasonable
time to correct.  See Springer
v. Springer, No. 06‑0382, 2007 WL 3230314, at *1 (Tex. Nov. 2, 2007).





[3]We do recognize that
Munroe did not sign the agreed order, possibly indicating that he did not agree
to its terms and conditions.  But
although the order was not signed until March 29, 2006, it was actually
rendered in open court on December 1, 2005. 
A party has the right to revoke his consent to an agreed judgment at any
time before the rendition of judgment, but not after
rendition.  See Arriaga v. Cavazos,
880 S.W.2d 830, 833 (Tex. App.CSan Antonio 1994, no writ) (citing Quintero v.
Jim Walters Homes, Inc., 654 S.W.2d 442, 444 (Tex. 1983)).  Accordingly, any attempt by Munroe to back
out of the parties= agreement by failing to
sign the agreed order in MarchCnearly four months after judgment was renderedCwas too late.  See id.