

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00119-CV

_____


MICHAEL KENNEDY, Appellant

V.

JANICE STAPLES, WILLIAM HOUSE, MARK CALHOON,
PAM FLETCHER, BASCOM BENTLEY, DEBORAH OAKS-EVANS,
CATHY LUSK, AND DARCY STARCHER, Appellees


On Appeal from the 369th Judicial District Court
Anderson County, Texas
Trial Court No. 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


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

A well known Aesop's fable[1] tells of a shepherd boy who repeatedly cries "wolf" to amuse himself at the expense of the nearby villagers, who faithfully run to his aid many times and each time find that his alarm is false. In the tale, when the wolf actually does start eating the boy's sheep, the villagers, having grown tired of the boy's game, fail to respond to his one truthful cry.

Michael Kennedy has, for decades, been a prolific[2] "writ writer" and a Texas prison inmate.

---

[1]"The Boy Who Cried Wolf," an Aesop's fable also known as "The Shepherd Boy and the Wolf."

[2]To say that Kennedy has been a frequent user of the Texas judicial system is an understatement. A cursory survey of just Texas appellate courts reveals that, since the mid-1980s, Kennedy has filed with the Texas appellate courts 253 separate proceedings, most of them since 2000:

| Number of Proceedings Filed by Kennedy in Texas Appellate Courts | |
|---|---|
| Texas Supreme Court | 20 |
| Texas Court of Criminal Appeals | 108 |
| First Court of Appeals (Houston) | 5 |
| Second Court of Appeals (Fort Worth) | 1 |
| Fourth Court of Appeals (San Antonio) | 16 |
| Sixth Court of Appeals (Texarkana) | 7 |
| Ninth Court of Appeals (Beaumont) | 4 |
| Tenth Court of Appeals (Waco) | 7 |
| Twelfth Court of Appeals (Tyler) | 74 |
| Fourteenth Court of Appeals (Houston) | 11 |
| **Texas Appellate Courts (total)** | **253** |

In fact, the Texas Court of Criminal Appeals recently expressly found that Kennedy has abused the writ of habeas corpus by repeatedly filing applications for such writs raising grounds already rejected—and barred the filing of future applications by Kennedy without a concomitant showing by Kennedy that the claims being filed were new claims. *See Ex parte Kennedy*, No. WR-18,555-66 (Tex. Crim. App. Oct. 6, 2010) [ref: http://www.cca.courts.state.tx.us/opinions/HTMLopinionInfo.asp?OpinionID=20153].
　　Kennedy has also abused the federal system. Both the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have recognized Kennedy's misuse of the system and have affirmed sanctions against him or limited his access to those courts. *See, e.g.*, *In re Kennedy*, 525 U.S. 153, 154 (1999) (per curiam);

Kennedy appeals the latest ruling on one of his filings, the dismissal by the District Court of Anderson County of Kennedy's putative civil rights lawsuit complaining of a wide assortment of defendants, including all members of the Texas Court of Criminal Appeals, all four district judges having jurisdiction in Anderson County, a clerk and deputy clerk of a court of appeals, a district clerk, and an attorney.[3] This latest effort by Kennedy, to the extent it can be understood, is clearly frivolous, consistent with the ruling of the trial court dismissing it. Kennedy continues to cry "wolf," yet, he still sets out only frivolous claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.003 (Vernon 2002) (suit frivolous or malicious and claim's realistic chance of success slight).

Here—without reciting any supporting facts, and in an effort to collaterally attack his latest conviction—in a conclusory, yet imaginative, fashion, Kennedy alleges a vast conspiracy of numerous judges, attorneys, and court personnel.[4] Among Kennedy's wide-ranging and only sometimes cohesive claims, as best as we can decipher them, are allegations, unsupported with any

---

*Kennedy v. Dist. Court of Tex., Anderson County*, 525 U.S. 884 (1998); *Kennedy v. Garner*, No. 92-8283 (5th Cir. Mar. 4, 1993) (not designated for publication) (appeal from W.D. Tex.) [ref: ftp://opinions.ca5.uscourts.gov/ unpub/92/ 92-8283.0.wpd.pdf]; *Kennedy v. Burkett*, No. 92-8469 (5th Cir. July 12, 1993) (per curiam) (not designated for publication) (appeal from W.D. Tex.) [ref: ftp://opinions.ca5.uscourts.gov/unpub/92/92-8469.0.wpd.pdf].

[3]Kennedy's lawsuit was brought along with a claim of inability to pay costs. Therefore, he was also required to file a separate affidavit or declaration identifying each suit that he had previously brought. Such an affirmation exists in this case. It states that he has not filed a lawsuit against any of these parties. That is obviously untrue: he had filed such suits multiple times against the district judges, and they were necessarily aware of the filings. Further, the affidavit is to contain a list "identifying each suit . . . previously brought by the person." TEX. CIV. PRAC. & REM. CODE ANN. § 14.004(a)(1) (Vernon 2002). This declaration does not meet that requirement. It is also, in light of the extensive history of lawsuits filed by this individual, an obvious and blatant untruth. That was not, however, the stated reason that the trial court dismissed the lawsuit.

[4]Kennedy has a second appeal before this Court, bearing our case number 06-10-00120-CV, also decided this day. He filed a single brief covering both appeals.

3

alleged facts, that the district clerk conspired to injure him by refusing to file an application for writ of habeas corpus and either destroyed or lost documents, that the attorney representing him conspired by denying his right to petition, that the judges all conspired against him because they knew he had committed no crime or offense, that the appellate clerks conspired against him by denying him permission to file a petition for rehearing or his petition for indigent records, that a deputy clerk "intentionally filed false and malice petition with the Texas Court of Criminal Appeals stating that Michael Kennedy filed a (PDR)," that a deputy clerk "used malice facts that William M. House, Jr. is Kennedy Counsel on appeals to deny Kennedy his rights and access to court under deception and trade practice acts and discriminations." All of these alleged wrongdoings are in connection with a recent conviction and the subsequent appeal. In essence, Kennedy is suing based on an alleged, vast, vague conspiracy against him.[5] Kennedy's suit is essentially an attempt through a civil lawsuit to collaterally attack his criminal conviction and sentence.

In his prayer, Kennedy asks for injunctive relief (a) to remove or recuse all named judges, (b) to order the clerks to file his application for writ of habeas corpus, and (c) to prohibit the appellate court clerks from stopping Kennedy from filing "writes [sic] or pleadings . . . and using [sic] false acts that William M. House is Michael Kennedy counsel." Notably, Kennedy does get

---

[5]*Kennedy v. State*, 12-08-00246-CR (Tex. App.—Tyler Dec. 16, 2009, pet. denied). The petition for discretionary review was disposed of by the Texas Court of Criminal Appeals April 15, 2010, and its mandate issued April 30, 2010. The new sentencing hearing was held January 26–27, 2011. Kennedy's original sentence was sixty-two years' incarceration; the sentence imposed in the second sentencing hearing was ninety-nine years.

around to asking for damages of $50,000.00, plus punitive damages and costs, from all defendants.[6]

Some issues raised in Kennedy's appellate brief are either unconnected or loosely connected with Kennedy's underlying pleadings. Kennedy argues that the trial court erred by dismissing his petition because all four of the district judges of Anderson County as named in his petition should have recused themselves, as they had been named as defendants in the original complaint. He also puts a measure of blame on the justices of the Twelfth Court of Appeals:

> 12th court of appeals justices should not have recused themslef [sic] from appeals and when this claims based on trial judges should not have rule or dismiss this suit apply as 12th Court of Appeals justices to recuse themslef [sic] from ruling on complaint or dismissing suit on themslef [sic].

Kennedy contends that, because he named every district judge in Anderson County as a defendant, none of them could rule on his petition. He also contends that the Texas Court of Criminal Appeals, the Twelfth Court of Appeals, the district attorney, attorney William House, Jr.,

---

[6]Kennedy's briefing does not separately attack any failure to follow recusal procedures by the judge, but his statement for recusal was neither the subject of a motion as contemplated by Rule 18a of the Texas Rules of Civil Procedure, nor was the pleading verified as required by the rule. Thus, the mandatory provisions requiring recusal were not triggered. *Vargas v. State*, 883 S.W.2d 256 (Tex. App.—Corpus Christi 1994, pet. ref'd). When a recusal motion is filed, the trial judge against whom the motion is directed may properly make an initial decision of whether the motion conforms with Rule 18a. *Barron v. State Atty. Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.); *Moorhead v. State*, 972 S.W.2d 93, 95 (Tex. App.—Texarkana 1998, no pet.). "Recusal may be waived if it is not raised by a proper motion." *McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The procedural requisites for recusal in Rule 18a(a) are mandatory, and a party who fails to conform waives his right to complain of a judge's failure to recuse himself. *Spigener v. Wallis*, 80 S.W.3d 174, 180 (Tex. App.—Waco 2002, no pet.); *Gill v. Tex. Dep't of Criminal Justice, Inst. Div.*, 3 S.W.3d 576, 579 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Pena v. Pena*, 986 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet. denied). Thus, the provisions of Rule 18a obligating a trial judge to either recuse himself or herself or refer the motion to the presiding judge of the administrative judicial district never come into play unless and until a formal, timely, written, and verified motion to recuse is filed. *Spigener*, 80 S.W.3d at 180; *Moorhead*, 972 S.W.2d at 95; *Limon v. State*, 632 S.W.2d 812, 815–16 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd).

and District Judge Mark Calhoon acted "in racial discrimination" to deny him the right to represent himself by appointing House to "forclose [sic] his innocnce [sic] when no crime committed."

Kennedy claims that those same courts refused to address his application for habeas corpus or allow his claims to be considered on appeal or to make findings of fact about why he was in prison in a different case. Kennedy contends that the trial court should be required to conduct an evidentiary hearing regarding his allegations that documents were not filed.

Kennedy then raises multiple arguments complaining about the failure to immediately conduct the retrial on sentencing by April 30, 2010, claiming that, because the April 30, 2010, mandate was not obeyed, his rights were denied. He goes on to complain that the clerks at the Twelfth Court of Appeals, that his court-appointed counsel, and that the Texas Court of Criminal Appeals denied his right to file a petition for rehearing or a petition for discretionary review (PDR). Kennedy claims those rights were violated because his PDR was denied.[7]

We affirm the dismissal, because (1) the trial judge, though a named defendant, was not "interested" in Kennedy's action; and (2) Kennedy's action was frivolous.

---

[7]The records of the underlying conviction show that Kennedy filed a pro se PDR on January 28, 2010. They also show that he presented approximately 125 documents to the Tyler Court of Appeals as motions in connection with that appeal.

*(1)*     *The Trial Judge, Though a Named Defendant, Was Not "Interested" in Kennedy's Action*

This Court has already twice addressed a claim by Kennedy that a trial judge was required to remove herself from a lawsuit Kennedy filed. In our opinion in *Kennedy v. Wortham*,[8] 314 S.W.3d 34 (Tex. App.—Texarkana 2010, pet. denied), as well as in the companion memorandum opinion, we concluded, among other things, that—because Kennedy had not sought money damages—the judge that ruled on the cases was not disqualified under the constitutional provision, as he had no direct pecuniary or personal interest in the case.

Here, however, Kennedy's pleading *does* seek monetary damages from each of the parties, including the trial judge in whose court the pleading was filed. Though Kennedy's claims are facially specious, if, under the controlling caselaw, the trial judge was disqualified and lacked authority to rule on his case, then the dismissal is void, and there is no authority that would allow us to review the case on the merits. We would thus be prohibited from determining the validity of the dismissal.

Disqualification cannot be waived, but can be raised at any time. *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982). As a general rule, a judge who is a party to a suit, even though he or she has not been served with process, may not preside over that case, decide any matters requiring judicial discretion, or approve the minutes of the court. *Hawpe v. Smith*, 22 Tex. 410 (1858). No judge shall sit in any case wherein he or she may be interested. *See* TEX.

---

[8]The first defendant's name here listed by Kennedy, Wortham, is a misspelling or misnomer. Kennedy apparently intended to name the Chief Justice of the Twelfth Court of Appeals in Tyler, the Honorable James Worthen.

7

CONST. art. V, § 11.  Judges shall disqualify themselves in all proceedings in which they have an interest in the subject matter in controversy.  *See* TEX. R. CIV. P. 18b(1)(b).  The interest that disqualifies a judge is an interest, however small, which rests on a direct pecuniary or personal interest in the result of the case.  *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979) (per curiam).  If a judge is disqualified, the judge is without jurisdiction to hear the case; therefore, any judgment rendered is void and a nullity.  *Glaser*, 632 S.W.2d at 148; *Gulf Mar. Warehouse Co. v. Towers*, 858 S.W.2d 556, 560 (Tex. App.—Beaumont 1993, writ denied); *Lone Star Indus., Inc. v. Ater*, 845 S.W.2d 334, 336 (Tex. App.—El Paso 1992, no writ).

The question before this Court is one we have not faced:  because Kennedy's petition nominally seeks money damages from the trial judge, does the law necessarily disqualify the trial judge?  If so, the law permits Kennedy, and others, to repeatedly and blatantly "shop" for judges and otherwise abuse the legal system, even allowing them to craft a set of circumstances whereby no judge in a county, or ultimately even in the state, could properly hear a case, even a case without any foundation.  Our research has found no reported case in this State with this sort of repeated, willful behavior on the part of a civil plaintiff.

Under certain circumstances, a judge may preside over a case despite being named as a defendant.  *See Cameron*, 582 S.W.2d at 776; *see also Hidalgo County Water Control & Improvement Dist. No. 1 v. Boysen*, 354 S.W.2d 420, 423 (Tex. Civ. App.—San Antonio 1962,

8

writ ref'd).   None of these cases, however, involve Kennedy's current tactic, both naming the trial judge as a defendant and seeking money damages against him or her.

The language used by the Texas Supreme Court in *Cameron* is instructive here.   Cameron was an attorney who sued the nine justices of the Supreme Court of Texas, complaining of the court's order setting a special fee assessment against members of the State Bar of Texas.   *See Cameron*, 582 S.W.2d at 776.   Upon reaching the Texas Supreme Court, the attorney argued that the justices were disqualified, or should recuse themselves, because they were all named as defendants in the suit.   *Id*. at 775–76.   The court held that its justices were not disqualified because, in reality, they had no more direct or pecuniary interest in the case than any other member of the bar association.   *Id*. at 776.   Regarding disqualification, the court stated:

> In applying the rule of disqualification, we should endeavor to follow the spirit and intent of the Constitutional rule.   The Constitution does not contemplate that judicial machinery shall stop.   If this is threatened, the doctrine of necessity will permit the judge to serve.   Respondents are parties only because they are named as parties.   To hold that merely naming a judge as a party would disqualify him [and] would put power in the hands of litigants to frustrate our judicial system.

*Id.* (citation omitted).

Here, Judge Bentley, as a named defendant from whom damages were sought, *superficially* appears to have a direct pecuniary or personal interest in this case.   We believe, however, that the question is not whether a pleading facially seeks damages against a judge, but whether that pleading actually sets out a colorable cause of action for damages against that judge.   This pleading does not.

9

There is nothing to suggest that the trial judge here was actually "interested" in Kennedy's case, as there is no allegation sufficient to potentially impose any monetary damages. This complaint offers only an array of conclusory allegations against numerous public servants, with no pleading of supporting facts, suggesting only that the trial judge and others engaged in a vast, vague conspiracy against Kennedy. Without a real, colorable claim for damages, that does not make the trial judge "interested."

Kennedy has been more prolific in his abuse of the legal system than any individual in our collective memory. An earlier footnote provides overall appellate statistics from Kennedy's filings. According to court records, in just the past five years, Kennedy has filed 63 separate proceedings with the Twelfth Court of Appeals in Tyler—35 original proceedings, 13 civil appeals and 15 criminal appeals.[9] In a substantial number of the civil proceedings, he has sued two or more of the Anderson County district judges, the district attorney for Anderson County, and various officials within that district clerk's office. His lawsuits uniformly failed.

In his four most recent lawsuits, and a mandamus decided by this Court, Kennedy has shifted tactics, seeking changes of judges by raising allegations of matters that would normally mandate the appointment of a different judge. By alleging, with no supporting facts, that all judges were involved in a vast conspiracy to convict an innocent man, Kennedy apparently thinks

---

[9]Kennedy has recently been incarcerated within the Twelfth Appellate District. The justices of the Twelfth Court of Appeals recused themselves from the cases and the Texas Supreme Court transferred them to this Court. We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* Tex. R. App. P. 41.3.

he has discovered how to manipulate the system to obtain a substitute judge—from a different region or county—one presumably more to his liking, both at the trial and appellate level. If we found automatic disqualification, then the judgment dismissing Kennedy's lawsuit as frivolous is void, and Kennedy's suit would be remanded for the appointment of yet another judge, this one from another county. Kennedy would have successfully eliminated all four of the judges presiding in Anderson County.

We do not find this result to be required or in keeping with sound judicial policy. Courts have an inherent judicial power to exercise their jurisdiction, to administer justice, and to preserve their independence and integrity. *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex. 1979). Kennedy's manipulation and gaming of the judicial system impinges on the duty of the trial and appellate courts to administer justice while preserving valuable judicial resources for the benefit of all legitimate litigants. The law cannot permit such abuse to continue.

No particular litigant is less entitled than any other to the judicial resources provided by the citizens of this state. Kennedy, however, due to his continued and systematic abuse of the judicial system of this state and beyond, has usurped for himself a lion's share of those resources. We would be remiss in our duties if we did not acknowledge Kennedy's abuses and act accordingly to prevent their recurrence. To sustain Kennedy's request to disqualify the trial judge would reward Kennedy's malfeasance and gamesmanship—while simultaneously imposing no penalty for his actions. It would sanction his abuse.

11

There is still another, independent reason the trial judge was not "interested" in Kennedy's suit. Kennedy's complaints all revolve around acts taken by the trial judge in connection with the underlying criminal proceeding, and the way in which the judge allegedly allowed or encouraged Kennedy's "improper" conviction.

These efforts to obtain relief run headlong into the concept of judicial immunity. A judge acting in his or her official judicial capacity enjoys absolute immunity from liability for judicial acts performed within the scope of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (judge not deprived of immunity because action taken was in error, was done maliciously, or was in excess of authority; immunity fails only when judge acts in clear absence of jurisdiction); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961). "Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction." *Alpert v. Gerstner*, 232 S.W.3d 117, 127 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The cases recognize that, while protecting the individual judge, this policy likewise serves to protect the public "whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Bradley v. Fisher*, 80 U.S. 335, 349 n.16 (1871); *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002).

This absolute judicial immunity extends to civil rights cases when a judge acts in a judicial capacity. *Forrester v. White*, 484 U.S. 219, 228–30 (1988). That holding was expanded by

12

statute when Congress enacted the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983 to provide that, in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, even injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. It appears that the purpose of that amendment was to strengthen judicial immunity protections even beyond their position at the time *Forrester* was decided. *LeClerc v. Webb*, 270 F.Supp.2d 779, 793 (E.D. La. 2003).

Kennedy's complaints of the trial judge are directed exclusively at the judge's judicial functions, with generic allegations of wrongdoing or failures in his exercise of those activities. Judicial immunity is absolute in this situation, and thus no recovery against the trial judge would be possible.

Under these unique facts, we decline to require disqualification when (1) the underlying action against the trial judge is, on its face, wholly unsupportable and is for actions taken completely within the judge's judicial function, thus eliminating any possibility of the trial judge's "interest" in the case; (2) Kennedy has repeatedly abused the judicial system with claims that are fully without merit; and (3) Kennedy's choice of defendants and the type of recovery sought are made, at least in part, for the purpose of eliminating particular judges as arbiters. We conclude as a matter of law, in this extraordinary situation, that the trial judge was not disqualified from dismissing Kennedy's case.

*(2)*     *Kennedy's Action Was Frivolous*

13

Beyond the issue of disqualification, did the trial court abuse its discretion by dismissing Kennedy's lawsuit as frivolous? It did not.

A complaint that lacks an arguable basis in law or in fact is frivolous. *Johnson v. Lynaugh*, 796 S.W.2d 705, 706 (Tex. 1990) (per curiam). Kennedy's complaint is frivolous, as it lacks any such arguable basis. Also, our previous judicial-immunity discussion applies here, as well, adding another reason that Kennedy's actions against the named judges are frivolous.

Kennedy raises a series of contentions in which he attempts to reach the ultimate point: that his lawsuit was not frivolous, and thus the trial court abused its discretion by dismissing his lawsuit. These issues attempt to state a claim that the named defendants conspired to violate Kennedy's civil rights. *See* 42 U.S.C.A. § 1983, et. seq. (West, Westlaw current through 2011).

We have reviewed Kennedy's claims as set out in his petition. Insofar as they constitute an attempted collateral attack on the procedures or results of his criminal trial, Kennedy's claims are not allegations properly addressed in a civil proceeding. Essentially, Kennedy claims that the judges conspired in his conviction despite knowing that he was innocent. A jury has found otherwise, an appeal was brought from the conviction, and the conviction was affirmed. There is no viable civil claim concerning his criminal case that can be brought.

Further, Kennedy's petition contains only a bare allegation that a conspiracy exists, lacking any allegation or explanation of any fact that would provide a basis for the claim. Kennedy argues that his conviction shows the existence of conspiracy. It does not. Kennedy's conviction

14

reflects the fact that a jury of his peers was convinced beyond a reasonable doubt that he committed the crime at bar. The mere fact that he was convicted in no way supports a claim of civil conspiracy.[10]

To state a claim for civil conspiracy, Kennedy had to allege that there were (a) two or more persons, (b) an object to be accomplished, (c) a meeting of the minds on the object or course of action, (d) one or more unlawful, overt acts, and (e) damages as a proximate result of such conspiracy. *Profitlive P'ship v. Surber*, 248 S.W.3d 259, 261 (Tex. App.—Fort Worth 2007, no pet.). In *Vacca v. Farrington*, 85 S.W.3d 438, 441–42 (Tex. App.—Texarkana 2002, no pet.), the inmate brought a Section 1983 civil rights action against prison officials, alleging that, in retaliation for filing a federal suit complaining of staff misconduct, he was subjected to, among other things, the filing of false disciplinary actions against him, with specific facts alleged to support his claim.

In contrast to *Vacca*, Kennedy never alleged facts to show that any agreement existed, or that any concerted action was taken against him. Indeed, he does not even allege that any particular improper actions were taken by the defendants. Kennedy failed to allege sufficient facts to support his claim of conspiracy. Thus, the trial court did not abuse its discretion by dismissing those portions of his action.

---

[10]A civil conspiracy consists of an agreement by two or more persons to act in combination to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means which results in damages to another. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854 (Tex. 1968); *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App.—Dallas 1988, pet. denied).

Kennedy also raises a series of contentions not related to his petition, but generally complaining about the length of time that had expired before his resentencing hearing was heard pursuant to the reversal of punishment in the underlying criminal case. Those issues are not part of this lawsuit, and are not properly before us.

Kennedy also complains because the Twelfth Court of Appeals and the Texas Court of Criminal Appeals have not allowed filing of all documents and habeas applications he has presented to them. These matters are involved with his failed collateral attacks on his conviction and are not civilly actionable absent extraordinary circumstances showing a complete failure of the system. Kennedy has alleged or shown no such extraordinary circumstances or failure. Kennedy is discontent because he has not been found innocent. He has alleged nothing that would justify civil relief.

Beyond the above, Kennedy makes additional complaints about the justices of the Twelfth Court of Appeals, but we cannot glean the nature of his contention from his complaints' lack of coherence. We overrule those complaints because Kennedy has inadequately briefed these points by neglecting to present argument and authorities as required by Rule 38.1(h) of the Texas Rules of Appellate Procedure. *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *see* TEX. R. APP. P. 38.1(h).

Further, Kennedy's complaints regarding the clerk's refusal to withdraw some unspecified PDR, which he alleges was presented by the counsel he wished to remove, shows no support in the

16

record, as it appears that the petition was filed pro se. *See http://www.cca.courts.state.tx.us/ opinions/Case.asp?FilingID=271809.*

Kennedy also argues that the trial court violated his rights by not following the mandate of the Twelfth Court of Appeals. The mandate was followed. Even if that were not the case, Kennedy's remedy would not be by a civil lawsuit seeking enforcement of the mandate.

Similarly, Kennedy's claims that the clerk of the Twelfth Court of Appeals and Kennedy's trial attorney, along with a host of others, denied his rights by refusing to allow him to file additional documents in attempting to obtain a rehearing in the criminal conviction or PDR following are unavailing. Those matters are all governed by rules of procedure, and he has no available civil complaint for the application of those rules to his case.

Although Kennedy intended to complain about many additional matters in his appeal, the brief is so illegible and incoherent that we cannot clearly glean any further arguments therefrom, and we will not speculate regarding the nature of those arguments.

Kennedy's petition contains no facts that would justify any claim seeking civil relief. The trial court did not abuse its discretion in dismissing Kennedy's lawsuit as frivolous.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     February 11, 2011
Date Decided:       March 1, 2011