**Opinion issued June 27, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00815-CV**

———————————

**SUSAN CARR, Appellant**

**V.**

**DIANA CLAUDIO, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1186536**

---

## MEMORANDUM OPINION

Appellant, Susan Carr, challenges the trial court's judgment entered, after a jury trial, in favor of appellee, Diana Claudio, in Claudio's forcible-detainer action

against Carr.[1]  In two issues, Carr contends that the trial court erred in rendering judgment against her.[2]

We affirm.

## Background

In Harris County Justice Court, Claudio filed a petition for eviction and forcible detainer, alleging that she was the owner of a property located at 12307 Lynda Drive, Houston, Harris County, Texas 77038 (the "property") and Carr was "[h]olding over after termination of [her] right of possession."[3]  Claudio sought possession of the property.  After a bench trial, the justice court entered an "Eviction – Judgment," ordering that Claudio have possession of the property.  Carr appealed to Harris County Civil County Court of Law No. 3 for a trial de novo.[4]

At trial, Claudio testified that she was the current owner of the property. According to Claudio, she was neighbors with the previous owner, Sherman

---

[1]  *See* TEX. PROP. CODE ANN. § 24.002.

[2]  In her briefing, Carr phrases her issues in the form of questions, asking: (1) "Whether the Trial Court erred when ruling that the evidence if [sic] fraud was not sufficient to legally invoke the Plea to Jurisdiction solely because of the Statute of Frauds?" and (2) "Whether the Doctrine of Promissory Estoppel or the equitable exception to the Statute of Frauds[] can be applied as a defense to the Statute of Frauds, where the non enforcement [sic] of the contract or enforcement of the Statute, would, it self, plainly amount to a fraud?"

[3]  *See id.* § 24.004 (justice court in precinct in which real property located has jurisdiction in forcible-detainer actions).

[4]  *See* TEX. R. CIV. P. 510.10.

Shumate, and she purchased the property from him for $50,000 cash on March 30, 2021. A deed was exchanged between Claudio and Shumate for the property.[5] No one other than Claudio had title to the property other than her.

After purchasing the property, Claudio did not move into the property because Shumate was ill and he wished to "pass away in his home," which she allowed. Claudio testified that Carr was Shumate's caregiver, and Claudio saw her at the property for about the last month before Shumate died. Carr stayed with Shumate at the property until his death. Following Shumate's death, Carr told Claudio that the property "was her home now." This prompted Claudio to initiate eviction proceedings.

Carlos De Uriarte testified that he owned an eviction company, and he was hired by Claudio to evict Carr from the property. De Uriarte sent a three-day notice to vacate the property to Carr by certified mail.[6]

---

[5] The trial court admitted into evidence a copy of grant deed, dated March 30, 2021, which conveyed the property from Shumate to Claudio in exchange for $50,000. The deed was filed with the Harris County County Clerk on November 22, 2021.

[6] The trial court admitted into evidence a copy of a document dated March 16, 2022, which was titled, "3 Day Notice to Vacate Following Sale." It was sent to Carr from De Uriarte, as the authorized agent of Claudio, and stated:

> This letter is being delivered to you to provide you with formal notice to vacate the premises located at 12307 Lynda Dr, Houston TX 77038
>
> (Here in after referred as the premises) after [the] following sale.
>
> Please take notice that you are unlawfully in possession of the premises reference[d] above. The premises you occupy w[as]

Christopher Bush testified that he notarized the March 30, 2021 grant deed which conveyed the property from Shumate to Claudio. Bush identified his signature on the grant deed and his "notary block." He stated that Shumate was present when Bush notarized the grant deed.

Christopher Shumate ("Christopher") testified that Shumate was his father, and Shumate previously owned the property. Shumate sold the property to Claudio. Christopher was not aware that Shumate had sold the property to Claudio until he found the grant deed a few days after Shumate died. Christopher had no reason to believe that Shumate did not want to sell the property to Claudio. Shumate did not "deed the property" to Christopher, Christopher's brother, or any other family member.

Christopher also testified that he met Carr at the hospital about a month before Shumate died because Carr had brought Shumate in. At the hospital, Shumate said

purchased by the owner, as evidence[d] by the GRANT DEED dated 03/03/2021 [sic].

You are required to vacate the premises within three (3) days following the date of service of this notice. Your failure to vacate the premises may result in the Owner commencing eviction proceedings against you. If the court determines that you are guilty of an unlawful detainer, the court may issue an order for your removal or an order providing for your non-admittance, directing the sheriff or constable to remove you. The court may also award a money judgment against you.

that he had considered giving Carr the property at one point in time, but he wanted to talk to Christopher and Christopher's brother about it.

As to Carr, Christopher stated that Shumate told him that "he had loaned [Carr] money to help with medical bills[] [and] with [a] vehicle." And Christopher stated that according to Shumate, Carr "worked around [his] house" to repay him. Christopher did not know that Carr was living at the property before Shumate's death.

During Christopher's testimony, the trial court admitted into evidence a copy of a document, which stated:

> . . . [P]er the wishes of Sherman Lee Shumate.
>
> Jack Shumate and Christopher Shumate agree to Move ownership of the residence and land at
>
> 12307 Lynda Dr
>
> Houston, TX 77038
>
> to Susan Carr. This transfer is to occur after the passing of Sherman Shumate and to be completed by Jack Shumate, executor of the Last will and testament of Sherman Shumate.

The document contained Christopher's signature, the signature of Christopher's brother, and Carr's signature, each dated May 12, 2021.[7]

---

[7] Bush testified that he notarized the document, but Carr's name and signature were not on the document when he notarized it. Only Christopher and Christopher's brother were present when Bush notarized the document. Carr was not present.

According to Christopher, when he signed the above-referenced document there was not a signature line for Carr. And Carr was not present when Christopher and his brother signed the document. Christopher did not know when Carr signed the document. Christopher also testified that when he signed the above-referenced document, he did not own the property so he would not have been able to "transfer the property at the time [he] signed [the document]."

Carla Claudio ("Carla") testified that Claudio was her daughter, and she lived across the street from Shumate. Carla knew Shumate for about five years before he died. Shumate told Carla that Carr was his friend, and she lived down the street. Carla saw Carr come to the property about once a month to clean for Shumate and then Carr would leave. When Shumate got very sick, Carr asked Shumate if she could stay at the property because her "post light" at her house was "out," and she did not have any money to fix it. Shumate never mentioned to Carla that he was giving the property to Carr, and Carla did not believe that Shumate intended to give the property to Carr. Carla stated that she had heard Carr say that she was Shumate's wife, but Carr was not; Carr had a husband.

Michael Lawrence testified that he had known Shumate since 1989 and they were friends. Carr lived about sixteen or eighteen houses down the street from Shumate, and she and Shumate were friends. Shumate told Lawrence that Carr "would be staying [at the property] after he was gone to take care of the place."

6

Lawrence "never knew anything about [a] contract [to sell the property] until after [Shumate] passed." Lawrence did not believe that Shumate would sell the property to Claudio because Shumate told Lawrence that "it was not for sale."

Carr testified that she had known Shumate for about thirty-three years, and she lived with him for five years before his death. According to Carr, she and Shumate were friends and then they became best friends. Shumate said that he loved Carr, and they "kissed every day." Shumate also asked Carr to marry him. Carr noted that she had seen Christopher's brother, Jack, "every now and then," "[w]henever [Shumate] needed some help." Carr only met Christopher one time. While Shumate was alive, Carr drove him "[t]o the VA, to the bank, [and] to get his prescriptions." Carr bought groceries for herself and Shumate.

Carr further testified that she was familiar with Shumate's signature, and it was not Shumate's signature on the March 30, 2021 grant deed. When asked whether Shumate "ever deed[ed] the property" to Carr, she responded, "No." But Carr also stated that Shumate told her that "he wanted [her] to stay [at the property] with him until he passed away," and after he died, "he wanted [Carr] to have the property and the house."

As to the document, dated May 12, 2021, that contained Christopher's signature, his brother's signature, and Carr's signature, Carr testified that she signed it at the same time as Christopher and Christopher's brother. There was not a notary

7

present at the time, but the document had already been notarized when Carr signed it. Shumate was present when the document was signed as well as Christopher's wife. Based on the document, Carr believed that she would get the property when Shumate died. But she did not believe that the document transferred any title to the property to her.

Question 1 of the trial court's charge to the jury asked the jury: "Does . . . Claudio have title to the property located at 12307 Lynda Drive, Houston, Texas 77038?" Question 2 of the trial court's charge asked the jury: "Was there notice to vacate sent to . . . Carr?" The jury answered "Yes" to both questions.

Based on the jury's verdict, the trial court rendered judgment in favor of Claudio, ordering that Claudio "shall receive [a] judgment for possession of the [property]."

### Inadequate Briefing

In her first and second issues, Carr asks: (1) "Whether the Trial Court erred when ruling that the evidence if [sic] fraud was not sufficient to legally invoke the Plea to Jurisdiction solely because of the Statute of Frauds?" and (2) "Whether the Doctrine of Promissory Estoppel or the equitable exception to the Statute of Frauds[] can be applied as a defense to the Statute of Frauds, where the non enforcement [sic] of the contract or enforcement of the Statute, would, it self, plainly amount to a fraud?"

On August 1, 2023, Carr filed an appellant's brief with this Court. On November 7, 2023, this Court notified Carr that her appellant's brief did not comply with the Texas Rules of Appellate Procedure because, among other things, it did not "state concisely the nature of the case," "the course of the proceedings, and the trial court's disposition of the case," "supported by record references"; "include a statement explaining why oral argument should or should not be permitted"; "state concisely all issues or points presented for review"; "state concisely and without argument the facts pertinent to the issues or points presented," "supported by record references"; "contain a succinct, clear, and accurate statement of the arguments made in the body of the brief"; "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"; and include an appendix with the necessary contents.[8] *See* TEX. R. APP. P. 38.1(d), (e), (f), (g), (h), (i), (k). On November 7, 2023, the Court struck Carr's brief and ordered her to file a corrected appellant's brief that complied with the Texas Rules of Appellate Procedure. On December 12, 2023, Carr filed another appellant's brief (the "December 12, 2023 appellant's brief").

"An appellate brief is meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." *Schied v. Merritt*,

---

[8] Carr's August 1, 2023 appellant's brief also did not comply with Texas Rule of Appellate Procedure 9.4. *See* TEX. R. APP. P. 9.4.

No. 01-15-00466-CV, 2016 WL 3751619, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.) (internal quotations omitted). To assert an issue on appeal, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if she does not adequately brief that issue by providing supporting arguments, substantive analysis, and appropriate citations to authorities and the record. *See id.*; *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994). Further, when an appellant's brief contains issues which are confusing and difficult to discern, the brief presents nothing for this Court to review. *See Golden v. Milstead Towing & Storage*, Nos. 09-21-00043-CV to 09-21-00045-CV, 2022 WL 1412303, at *2 (Tex. App.—Beaumont May 5, 2022, no pet.) (mem. op.) (where briefing contained confusing and disjointed issues, those issues waived due to inadequate briefing); *Kennedy v. Staples*, 336 S.W.3d 745, 754 (Tex. App.—Texarkana 2011, no pet.) (concluding issues waived due to inadequate briefing, where appellant's complaints lacked coherence); *Massey v. Royall*, No. 14-02-01260-CV, 2004 WL 114989 at *1 (Tex. App.—Houston [14th Dist.] Jan. 27,

2004, no pet.) (mem. op.) (holding appellant's incomprehensible issue could not be addressed and presented nothing for appellate court to review). "Only when [the Court is] provided with proper briefing may [it] discharge [its] responsibility to review the appeal and make a decision that disposes of the appeal one way or the other." *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.); *see also Roberts for Roberts v. City of Texas City*, No. 01-21-00064-CV, 2021 WL 5702464, at *2 (Tex. App.—Houston [1st Dist.] Dec. 2, 2021, no pet.) (mem. op.) (appellate court may not "abandon[] its role as judge and assum[e] the role of advocate for a party").

Here, the two issues raised in Carr's December 12, 2023 appellant's brief are largely incomprehensible. *See Golden*, 2022 WL 1412303, at *2 (where briefing contained confusing and disjointed issues, those issues waived due to inadequate briefing); *Kennedy*, 336 S.W.3d at 754 (concluding issues waived due to inadequate briefing, where appellant's complaints lacked coherence). And Carr's brief does not contain "clear and concise argument[s] for the contentions made, with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i); *Irisson v. Lone Star Nat'l Bank*, No. 13-19-00239-CV, 2020 WL 6343336, at *2–3 (Tex. App.—Corpus Christi–Edinburg Oct. 29, 2020, no pet.) (mem. op.) ("When an appellant's brief fails to contain clear and concise argument for the contentions made with appropriate citations to authorities, the appellate court is not responsible for

11

doing the legal research that might support a party's contentions."); *Richardson v. Marsack*, No. 05-18-00087-CV, 2018 WL 4474762, at *1 (Tex. App.—Dallas Sept. 19, 2018, no pet.) (mem. op.) ("Our appellate rules have specific requirements for briefing," including requiring "appellants to state concisely their complaints, to provide succinct, clear, and accurate arguments for why their complaints have merit in law and fact, to cite legal authority that is applicable to their complaints, and to cite appropriate references in the record."); *Huey*, 200 S.W.3d at 854 ("We have no duty to brief appellant's issue for her. Failure to cite to applicable authority or provide substantive analysis waives an issue on appeal.").

Instead, the argument section of Carr's brief "is rambling, disjointed, and difficult to follow." *See Porter v. Kennard Law PC*, No. 01-22-00153-CV, 2022 WL 11413164, at *6 (Tex. App.—Houston [1st Dist.] Oct. 20, 2022, pet. denied) (mem. op.) (briefing did not comply with Texas Rules of Appellate Procedure where argument was "rambling, disjointed, and difficult to follow"); *see also Shockley v. Yalk*, No. 07-22-00128-CV, 2023 WL 1993683, at *2 (Tex. App.—Amarillo Feb. 14, 2023, no pet.) (mem. op.) (declining to address any arguments potentially raised in briefing, where appellant brief was "disorganized, rambling, . . . and incredibly hard to decipher").

Accordingly, we hold that Carr has waived her first and second issues on appeal due to inadequate briefing. *See Purse v. DeJesus*, No. 01-17-00855-CV,

2019 WL 237751, at *1–3 (Tex. App.—Houston [1st Dist.] Jan. 17, 2019, no pet.) (mem. op.) (appellant waived all issues where brief did not contain any appropriate argument, analysis, discussion, or support for his purported issues); *see also Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied) (appellate court cannot remedy deficiencies in appellant's brief and argue case for appellant).

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.