

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00050-CV

IN THE MATTER OF B.P., JR., A JUVENILE

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 6000-J

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice Rambin

## O P I N I O N

B.P., Jr. (B.P.), appeals, asserting as his sole issue that the trial judge was constitutionally disqualified from presiding over a 2024 juvenile delinquent conduct disposition hearing that resulted in a ten-year determinate sentence and from transferring B.P., in 2025, from the Texas Juvenile Justice Department (TJJD) to the Texas Department of Criminal Justice (TDCJ) to serve out the remainder of that determinate sentence. If the trial judge was disqualified, those orders would be void. B.P. contends that the trial judge was disqualified, and thus, the orders are void, because before taking the bench, the trial judge was an assistant district attorney, and in that prior capacity had prosecuted B.P. regarding other conduct in 2021, and also had appeared, in 2022, at a hearing to revoke the probation arising from the 2021 conduct. B.P. contends that the 2024 and 2025 orders were entered in the same cause number as the 2021 and 2022 orders and that later orders concern the same subject matter as the earlier orders, if one considers the "same subject matter" to be an umbrella that covers four years of B.P.'s conduct. We do not view things that way. The 2024 disposition and the subsequent 2025 transfer to the TDCJ were based on new and different conduct: a 2024 aggravated robbery by B.P. Accordingly, we find that the trial judge was not disqualified. We affirm the trial court's 2024 and 2025 orders.

## I. Background

In 2021, and again in 2024, B.P., a juvenile, was alleged to have engaged in delinquent conduct.

In the 2021 matter, under cause number 6000-J in the County Court at Law No. 1 of Gregg County (the CCL), B.P. was alleged and adjudged to have engaged in delinquent conduct

2

that would constitute unauthorized use of a vehicle and burglary of a habitation. Later, the juvenile court received evidence that B.P. violated the terms and conditions of his probation, and the court revoked B.P.'s probation and entered a disposition order committing him to the TJJD for an indeterminate sentence.

In late 2023, B.P. was released and discharged from the TJJD.

Angie Konczak, a Gregg County assistant district attorney (ADA) at the inception of the 2021 matter, filed the 2021 petition against B.P., appeared as counsel for the State at B.P.'s adjudication and disposition hearing, and generally filed and presented documents to the juvenile court as counsel for the State during that matter. ADA Konczak also acted as one of the State's attorneys in the subsequent proceedings to revoke B.P.'s probation of the 2021 adjudication. ADA Konczak appeared on behalf of the State at the hearing on the State's motion to revoke on September 1, 2022, the latest date Konczak appeared in B.P.'s proceedings on behalf of the State.

Konczak's term as judge of the CCL began on January 1, 2023.[1]

After his December 2023 discharge from the TJJD related to the 2021 disposition, B.P. was alleged to have engaged in delinquent conduct on January 3, 2024, that would constitute two separate counts of aggravated robbery, also under cause number 6000-J in the CCL. Konczak, acting as the juvenile court judge in the CCL, conducted an adjudication and disposition hearing

---

[1]At the State's request, we take judicial notice of the fact that Judge Konczak was elected in November 2022 and that her term began on January 1, 2023. *See* TEX. R. EVID. 201(b)(2) (A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also* TEX. GOV'T CODE ANN. § 601.003(a) ("The regular term of an elective . . . county . . . office begins on January 1 of the year following the general election for state and county officers.").

3

on March 14, 2024. Judge Konczak accepted B.P.'s stipulation of evidence and plea of true and followed his plea agreement with the State. Judge Konczak entered an order of adjudication and disposition, finding that B.P. violated the Texas Penal Code by committing one of the alleged incidents of aggravated robbery and committing B.P. to the TJJD to serve a determinate sentence of ten years. In May 2025, Judge Konczak, after a transfer hearing, ordered that B.P. be transferred to the TDCJ.

B.P. complains of the 2024 adjudication and disposition order and the 2025 transfer order on the basis that Judge Konczak was disqualified from issuing either of them.[2]

---

[2]Facially, it appears that B.P.'s June 2, 2025, notice of appeal was untimely as to the trial court's disposition order entered more than a year earlier (on March 14, 2024), but was timely regarding the trial court's May 15, 2025, transfer order. *See* TEX. R. APP. P. 26.1 (providing from thirty to ninety days to file a notice of appeal). The parties prioritized the main issue, whether Judge Konczak was disqualified. Neither party specifically addresses the timeliness of the 2025 notice of appeal regarding the 2024 disposition order. If indeed the notice of appeal is timely as to one order, but untimely as to another, that would present something of a jurisdictional dilemma: Can we speak to both orders?

"[W]e must consider our jurisdiction, even if that consideration is sua sponte." *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (per curiam).

On the one hand there is the jurisdictional effect of a timely notice of appeal (or lack thereof): "A timely notice of appeal is an essential prerequisite for the appellate court's jurisdiction." *Mitschke v. Borromeo*, 645 S.W.3d 251, 253 (Tex. 2022).

On the other hand, there is the jurisdictional effect of constitutional disqualification: "It has always been the rule in Texas that *any orders* or judgments rendered by a trial judge who is constitutionally disqualified are void and without effect." *Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) (emphasis added). "[T]he disqualification of a judge is a *jurisdictional issue* that cannot be waived." *Freedom Commc'ns*, 372 S.W.3d at 624 (emphasis added). "[D]isregard of the constitutional disqualification is error that can be raised at any point in the proceeding." *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982); *see Kennedy v. Staples*, 336 S.W.3d 745, 749 (Tex. App.—Texarkana 2011, no pet.) ("Disqualification . . . can be raised at any time."). "The issue of disqualification of the judge involves the jurisdiction of the court to act and should be considered by us as unassigned error in the interest of justice." *Lee v. State*, 555 S.W.2d 121, 122 (Tex. Crim. App. 1977).

Without conceding that the notice of appeal is untimely as to the 2024 order, B.P. relies on *Buckholts* for the proposition that he can assert constitutional disqualification in the first instance on appeal. That argument could be viewed as B.P. indirectly addressing the 2024 order in the event of an untimely notice of appeal, or it could be viewed as a contention by B.P. that, given a timely notice of appeal, he may present a constitutional disqualification question to this Court without first presenting the question to the trial court. The State does not address the

4

## II.    Judicial Disqualification

We turn to B.P.'s complaint that the trial judge was disqualified on account of serving as counsel for the State against B.P. in the 2021 disposition and the 2022 motion to revoke.  If B.P. is correct, then the trial judge was, under the Texas Constitution, without authority to act, and the trial court's 2024 disposition order and 2025 transfer order are void.  We find, however, that B.P.'s argument fails.  Disqualification applies "when the judge shall have been counsel in the case."  TEX. CONST. art. V, § 11.  For reasons we now discuss, we find that "the case" is not so broad as to encompass ADA Konczak's involvement in a matter arising from a new aggravated robbery by B.P.

"[A] 'disqualified judge has no power to act . . .' and . . . a judge's disqualification is thus a nonwaivable jurisdictional issue."  *Tex. Windstorm Ins. Ass'n v. Pruski*, 689 S.W.3d 887, 893 (Tex. 2024) (quoting *Freedom Commc'ns*, 372 S.W.3d at 624); *see In re Marriage of Dickey*,

---

timeliness of the notice of appeal at all, nor does it respond to B.P.'s citation to *Buckholts*.  Instead, the State goes directly to the merits of the disqualification question.

Given that neither party directly addressed the timeliness of the notice of appeal regarding the 2024 order, and given the State's lack of opposition to B.P.'s reliance on *Buckholts*, this is not the best occasion for us to explore the scope of notices of appeal, and whether an appellate court, having jurisdiction over one order of the trial court, may (or even must) speak to whether other orders of the trial court are void in the event that the trial judge was constitutionally disqualified.  Here, the notice of appeal was timely as to the 2025 transfer order.  Therefore, we have jurisdiction to rule on B.P.'s disqualification arguments against the trial judge, at least as to the 2025 order. *See Mitschke*, 645 S.W.3d at 253.  Beyond that, *based on the arguments of the parties, and without commenting on how we might rule in future matters*, we decide that the timely notice of appeal as to the 2025 order gives us jurisdiction to hear B.P.'s constitutional disqualification claim, and we further hold that, pursuant to *Buckholts*, we can speak to the 2024 disposition order, which is to say that the timely notice as to the 2025 order properly got B.P. in the appellate courthouse door, and once in, he made an argument that since we are hearing his case anyway, it is proper for us to address the 2024 order too.  Thus, whether we can speak to the 2024 order becomes a matter of the argument of the parties, which B.P. wins because the State did not respond to B.P.'s argument on that point.  *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) ("Our adversary system of justice generally depends 'on the parties to frame the issues for decision and assign[s] to courts the role of neutral arbiter of matters the parties present.'" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (alteration in original))).  As a result, it is unnecessary for us to decide, and we do not decide, whether the notice of appeal is untimely as to the 2024 order.

No. 06-23-00004-CV, 2023 WL 5624118, at *2 (Tex. App.—Texarkana Aug. 31, 2023, no pet.) (mem. op.); *In re K.E.M.*, 89 S.W.3d 814, 818 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). "In both criminal and civil cases, a judge's disqualification arising from a constitutional or statutory provision 'affects jurisdiction' and renders the proceeding a nullity."[3] *In re K.E.M.*, 89 S.W.3d at 818 (quoting *Davis v. State*, 956 S.W.2d 555, 558 (Tex. Crim. App. 1997) (citing *Buckholts*, 632 S.W.2d at 148)). "Although we do not have jurisdiction 'to address the merits of appeals from void orders or judgments,' we do 'have jurisdiction . . . to determine' whether an 'order or judgment underlying the appeal is void and make appropriate orders based on that determination.'" *Antolik v. Antolik*, 625 S.W.3d 530, 538 (Tex. App.—Texarkana 2021, pet. denied) (quoting *Freedom Commc'ns*, 372 S.W.3d at 623). "[A] challenge to a trial judge's legal qualifications may be raised for the first time on appeal." *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 443 n.1 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Wilson v. State*, 977 S.W.2d 379, 380 (Tex. Crim. App. 1998)).

"All judges have the duty to sit and decide matters before them unless a basis exists for disqualification or recusal." *In re K.E.M.*, 89 S.W.3d at 818 (citing *Rogers v. Bradley*, 909 S.W.2d 872, 879 (Tex. 1995) (Enoch, J., concurring)).

While judges are under a constitutional duty to hear and decide the cases before them, there is a countervailing constitutional mandate: "No judge shall sit in any case . . . when the judge shall have been counsel in the case." TEX. CONST. art. V, § 11; *see In re Marriage of Dickey*, 2023 WL 5624118, at *2. And "[a] judge must disqualify in any proceeding in which

---

[3]"Although quasi-criminal in nature, proceedings in juvenile court are considered civil cases . . . ." *In re M.P.A.*, 364 S.W.3d 277, 282 n.2 (Tex. 2012) (quoting *In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009) (orig. proceeding)).

6

. . . the judge has served as a lawyer in the matter in controversy." TEX. R. CIV. P. 18b(a)(1); *see*

*In re Marriage of Dickey*, 2023 WL 5624118, at \*2.

The Texas Supreme Court has held the constitutional term "in the case" and the Rule's term "matter in controversy" to be coextensive: "Rule 18b(1)(a) was not intended to expand disqualification further than constitutionally required." *Tesco Am.*, 221 S.W.3d at 553; *see id*. at 554 (finding an appellate justice disqualified where, before taking the bench, she had worked at a large firm "at the same time another attorney with the firm served as counsel *in [that] appeal*" (emphasis added)).

### A. Former Prosecutors as Judges

"Although quasi-criminal in nature, proceedings in juvenile court are considered civil cases . . . ." *In re M.P.A.*, 364 S.W.3d at 282 n.2 (quoting *In re Hall*, 286 S.W.3d at 927). Since juvenile matters are quasi-criminal, the Texas Supreme Court looks to the decisions of the Texas Court of Criminal Appeals when resolving juvenile matters. *See id.*[4] Regarding constitutional disqualification, the Court of Criminal Appeals has held that "the prohibition in the Texas Constitution . . . against a judge hearing a case in which he has acted as counsel requires that he *actually have participated in the very case which is before him*." *Gamez v. State*, 737 S.W.2d 315, 319 (Tex. Crim. App. 1987). "It is, of course, well settled that the mere fact that the trial judge personally prosecuted the appellant in past cases does not disqualify h[er] from presiding over a trial where a new offense is charged." *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex.

---

[4]In *In re M.P.A.*, for example, the Texas Supreme Court cited the Court of Criminal Appeals for matters such as the "actual innocence" standard, the deference shown to the fact-finder on habeas review, and review of the testimony of a recanting witness. *In re M.P.A.*, 364 S.W.3d at 283.

7

Crim. App. 1970), *cert. denied* 402 U.S. 914 (1971). Indeed, "[a] judge is not disqualified from sitting because [s]he was counsel in other prosecutions against the accused, even if those prosecutions resulted in convictions which are alleged in the indictment for the purpose of enhancement of punishment in the event of conviction of the primary offense." *Gamez*, 737 S.W.2d at 319 n.6.

### B. The Juvenile Justice Context

B.P. relies on a case from our sister court that considered the application of judicial disqualification in the context of juvenile adjudications. *See In re K.E.M.*, 89 S.W.3d at 828. The *In re K.E.M.* court held that "rule 18b(1)(a) imposes an objective standard for judicial disqualification as applied to juvenile adjudications that does not require any showing of actual bias, harm, or prejudice." *Id.* The *In re K.E.M.* court went on to determine that

> under rule 18b(1)(a) as applied to juvenile adjudications . . . the grounds for constitutional disqualification from hearing a case of a judge who was a former prosecutor are: (1) personal participation by the judge as prosecutor in any way, however slight, in the investigation or prosecution of the same case or of a case arising out of the same set of operative facts; or (2) supervisory authority by the judge as prosecutor at the time the case was investigated, prosecuted, or adjudicated over attorneys who actually investigated or prosecuted the same case or a case arising out of the same set of operative facts.

*Id.*

The facts of this case do not require us to review the entirety of the *In re K.E.M.* approach. For example, we need not examine *In re K.E.M.*'s degree-of-involvement test ("in any way, however slight") because there is no dispute that, before taking the bench, now-Judge Konczak was involved in the prosecution of B.P. *See id.* What the parties before us do dispute

8

is the connectedness, or not, of the legal proceedings before and after Judge Konczak took the bench, specifically in the context of juvenile justice proceedings.

On that question, B.P. asserts broadly, "Though the proceedings [against B.P.] involved separate 'referrals,' they all ultimately sought the same end:  to protect the best interests of B.P. Jr. and the community at large."  Taken literally, *In re K.E.M.*'s "arising out of the same set of operative facts" could perhaps be read to support B.P.'s view that the juvenile is, in essence, the relevant "operative fact" and hence all matters involving the juvenile "aris[e] out of" the "same set of operative facts."  *See id.*  It does not appear that *In re K.E.M.* is so broad.  While B.P. relies extensively on *In re K.E.M.*,[5] he does not cite *In re K.E.M.* specifically for this broad proposition. More importantly, *In re K.E.M.*'s discussion of the Texas Supreme Court's and the Court of Criminal Appeals' authority counsels against reading *In re K.E.M.* too broadly.  *See id.* at 821– 22 (citing *In re O'Connor*, 92 S.W.3d 446, 449 (Tex. 2002) (per curiam) (orig. proceeding) (holding that "the divorce action and the modification proceeding involved the same matter in controversy—custody, visitation, and the right to determine the child's residence")); *id.* at 826 ("[I]t is well settled in Texas that the mere fact that the trial judge personally prosecuted the defendant for past crimes does not disqualify the judge from presiding over a trial where a new offense is charged." (citing *Hathorne*, 459 S.W.2d at 829)).

## III.    Analysis

Considering the facts of this case as compared to the facts of *In re O'Connor* and *Hathorne*, we find B.P.'s new aggravated robbery to be less analogous to the modification of the

---

[5]Though it contests B.P.'s reading of *In re K.E.M.*, the State likewise points us to *In re K.E.M.* as applying disqualification principals in the juvenile justice context.

custody provisions of a divorce decree and more analogous to a new criminal prosecution for a new offense.[6] Reading *In re K.E.M.*'s "arising out of the same set of operative facts" to be consistent with "the matter in controversy"[7] and "the case,"[8] we find that the circumstances here do not meet any of the above-discussed tests: "arising out of the same operative facts," "the matter in controversy," or "the case." *See id.* at 821, 828.

The 2024 and 2025 orders resulted from different operative facts. The 2021 and 2022 facts are different, as demonstrated in significant part by B.P.'s release in 2023. Both the 2024 and 2025 orders resulted from new, post-release facts, namely B.P.'s 2024 aggravated robbery.

The difference in the facts can be seen in the State's two separate petitions against B.P. The 2021 petition alleged delinquent behavior that occurred on July 6, 2021, involving unauthorized use of a vehicle and burglary of a habitation, each against R. James. B.P. completed his sentence and was released on parole in September 2023 and discharged in

---

[6]For this reason, we are unpersuaded by B.P.'s contention that proceedings under the same cause number, as were the divorce and modification in *In re O'Connor*, must of necessity be part of the same matter in controversy. *See In re O'Connor*, 92 S.W.3d at 447, 449. Neither party provided any explanation as to why the same cause number was used for both the 2021 matter and the 2024 matter, and the record is silent as to whether the usual practice in Gregg County is to assign only one cause number to one juvenile, no matter the number of separate petitions filed against that juvenile. The Juvenile Justice Code seems to anticipate the assignment of a cause number associated with each petition filed against a juvenile. *See* TEX. FAM. CODE ANN. §§ 58.256(b)(3) (An application for sealing a juvenile's records must include "the cause number assigned to each petition relating to the person filed in juvenile court, if any, and the court in which the petition was filed."), 58.258(a)(4) (An order sealing juvenile records must, "if any petitions relating to the [juvenile] were filed" include "the cause number assigned to each petition and the court and county in which each petition was filed."). Again, neither party addressed those statutes, nor did they otherwise address whether the Legislature, through the Juvenile Justice Code, intended to create a concept of "the case" applicable to juvenile matters that somehow differs from the longstanding interpretation of the Texas Constitution's use of "the case" in criminal proceedings against adults, which, as stated above, does not disqualify a judge who personally previously prosecuted a defendant "from presiding over a trial where a new offense is charged." *Hathorne*, 459 S.W.2d at 829.

[7]TEX. R. CIV. P. 18b(a)(1).

[8]TEX. CONST. art. V, § 11.

10

December 2023. The 2024 petition alleged delinquent behavior that occurred on January 3, 2024, involving two instances of aggravated robbery against J. Ward. Two separate adjudication orders were entered, and two separate dispositions entered. Judge Konczak had left the district attorney's office and taken the bench in the CCL almost a year before B.P.'s 2021 proceedings were finally resolved through his release from the TJJD in December 2023 and over a year before B.P. committed the delinquent acts for which he was accused in early 2024. Thus, as judge, what was before her was a new petition based on new conduct by B.P.

Even though B.P.'s juvenile proceedings were all handled under the same cause number, nothing in the record supports B.P.'s argument that the two proceedings arose out of the "same set of operative facts" under *In re K.E.M.*,[9] constitute the same "matter in controversy" under Rule 18b(a)(1), or constitute "the case" for purposes of Article V, Section 11. We conclude Judge Konczak was not disqualified from issuing the 2025 transfer order. We overrule B.P.'s sole issue.

## IV. Conclusion

We affirm the juvenile court's disposition order of March 14, 2024, and the juvenile court's order of transfer of May 15, 2025.

Jeff Rambin
Justice

Date Submitted:     October 29, 2025
Date Decided:       December 10, 2025

---

[9] *See In re K.E.M.*, 89 S.W.3d at 828.

11